# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## DEBANO-GRIFFIN v LAKE COUNTY

Docket No. 143841. Argued October 10, 2012 (Calendar No. 6). Decided February 8, 2013.

Cheryl Debano-Griffin brought an action in the Lake Circuit Court against Lake County and the Lake County Board of Commissioners alleging, in part, that she had been terminated from her position as the director of Lake County's 911 department in violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, after she raised concerns about a potentially improper transfer of county funds from the county's ambulance account and regarding the ambulance service provided to the county. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). The court, Peter J. Wadel, J., denied the motion, and the jury returned a verdict in plaintiff's favor. Defendants appealed. The Court of Appeals, ZAHRA, P.J. (WHITBECK, J., concurring and M. J. KELLY, J., dissenting), in an unpublished opinion, issued October 15, 2009 (Docket No. 282921), reversed and remanded for entry of an order granting summary disposition to defendants. In lieu of granting leave to appeal, the Supreme Court reversed the judgment of the Court of Appeals and remanded the case to that Court for consideration of an additional argument that had been raised by defendants. 486 Mich 938 (2010). On remand, the Court of Appeals, MURRAY, P.J., and HOEKSTRA, J. (STEPHENS, J., dissenting), in an unpublished opinion per curiam, issued August 25, 2011 (Docket No. 282921), held that plaintiff had failed to establish a genuine issue of material fact regarding the causation element of her claim and again reversed the trial court's order denying defendants' motion for summary disposition. The Supreme Court granted plaintiff's application for leave to appeal. 491 Mich 874 (2012).

In an opinion by Justice CAVANAGH, joined by Chief Justice YOUNG and Justices MARKMAN and MARY BETH KELLY, the Supreme Court *held*:

Judicial review of plaintiff's claim under the WPA, which questioned defendants' proffered reason for the elimination of her position by asserting that the proffered reason for termination was a pretext for retaliation, violated neither the business-judgment rule nor the separation of powers given that review of the claim merely required examination of whether the county board had acted outside its constitutionally and legislatively granted powers and that plaintiff did not question whether the purportedly economic decision was wise, shrewd, prudent, or competent.

1. Under the WPA, a plaintiff may establish a prima facie case by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an

adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action. In this case, only the causal connection was at issue. Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link existed between the whistleblowing act and the employer's adverse employment action. A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a fact-finder could infer that the plaintiff was the victim of unlawful retaliation. Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation when retaliation is claimed. In this case, when viewed in the light most favorable to plaintiff, the facts supported a reasonable inference that plaintiff was the victim of unlawful retaliation. Specifically, during a 12-day period when plaintiff engaged in protected activity by raising the concerns, her position went from fully funded to nonexistent; from that evidence, a rational fact-finder could infer that the board had decided to fund plaintiff's position until she voiced her complaints. Further, plaintiff made her complaints to the board that ultimately eliminated her position. It is reasonable to infer that the more knowledge the employer has of the protected activity, the greater the possibility of an impermissible motivation for the adverse employment action. Additionally, the board remedied its prior and potentially unlawful action after plaintiff voiced her concerns, suggesting that because of plaintiff's complaints, the board was forced to do something it would not otherwise have done. From that evidence, a reasonable inference could be drawn that the board was motivated to eliminate plaintiff's position because of her complaints.

2. Once a plaintiff establishes a prima facie case, a presumption of retaliation arises because an employer's adverse action is more likely than not based on the consideration of impermissible factors if the employer cannot otherwise justify the action. The employer might be entitled to summary disposition, however, if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that his or her protected activity was a motivating factor for the employer's adverse action. A plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but must raise the issue that it was pretext for unlawful retaliation. In this case, defendants claimed that plaintiff's position was eliminated because of economic necessity and that plaintiff could not challenge that justification because any challenge would either impermissibly question defendants' business judgment or unconstitutionally require judicial review of a legislative body's policy decision, violating the separation of powers. A plaintiff can establish that a defendant's stated legitimate, nondiscriminatory reasons are pretexts (1) by showing that the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext. In this case, plaintiff did not question defendants' business judgment. Rather, plaintiff asserted that defendants' proffered justification had no basis in fact, or at least was not the actual factor motivating the decision, when she offered evidence that, when viewed in the light most favorable to her, suggested that the county was not facing a budget crisis. Further, the WPA expressly waives legislative immunity, making the act fully applicable to public employers. Thus, the question whether the board lawfully exercised its authority when it eliminated plaintiff's position was subject to judicial review, and that review did not violate the separation of powers. Plaintiff presented sufficient evidence to conclude that

reasonable minds could differ regarding the board's true motivation for eliminating her position and raised a genuine issue of material fact regarding causation. Defendants were not entitled to summary disposition.

Judgment of the Court of Appeals reversed, trial court's denial of defendants' motion for summary disposition reinstated, and trial court order entering judgment in favor of plaintiff reinstated.

Justice ZAHRA took no part in the decision of this case because he was on the Court of Appeals panel that issued the initial opinion.

Justice MCCORMACK took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack

FILED FEBRUARY 8, 2013

STATE OF MICHIGAN

SUPREME COURT

CHERYL DEBANO-GRIFFIN,

Plaintiff-Appellant,

v                                               No. 143841

LAKE COUNTY and LAKE COUNTY
BOARD OF COMMISSIONERS,

Defendants-Appellees.

BEFORE THE ENTIRE BENCH (except ZAHRA and MCCORMACK, JJ.)

CAVANAGH, J.

This case requires us to determine whether plaintiff, Cheryl Debano-Griffin, provided sufficient evidence to create a genuine issue of material fact regarding the causation element of her claim under the Whistleblowers' Protection Act (WPA), MCL 15.361, *et seq.* We hold that plaintiff presented evidence that showed more than a temporal relationship between the protected activity and defendants' adverse employment action. See *West v Gen Motors Corp*, 469 Mich 177; 665 NW2d 468 (2003). Also, because plaintiff must rely on circumstantial evidence to overcome defendants' motion

for summary disposition, the framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), is applicable. In this case, we hold that plaintiff provided sufficient evidence to establish her prima facie case of unlawful retaliation under the WPA.

Additionally, we must determine whether plaintiff's claim, which questions defendants' proffered reason for the elimination of her position by asserting that the proffered reason was a pretext for retaliation, violates either the business-judgment rule, see *Hazle v Ford Motor Co*, 464 Mich 456, 475-476; 628 NW2d 515 (2001), or the separation of powers. We hold that it does not violate the separation of powers because judicial review of plaintiff's statutory claim merely examines whether the county board of commissioners acted outside its constitutionally and legislatively granted powers. Additionally, plaintiff's challenge to defendants' budgetary justifications does not implicate the business-judgment rule because plaintiff does not question whether the economic decision was "'wise, shrewd, prudent, or competent.'" See *id*. at 476 (citation omitted).

Moreover, in addition to adequately rebutting defendants' facially legitimate budgetary grounds for eliminating plaintiff's position, plaintiff presented sufficient evidence to conclude that reasonable minds could differ regarding defendants' true motivations for eliminating her position. Therefore, plaintiff created a triable issue of fact and defendants were not entitled to summary disposition. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's denial of defendants' motion for summary disposition.

## I. FACTS AND PROCEEDINGS

In 1998, plaintiff began working as the director of Lake County's 911 department. Before her hiring, county voters had passed a millage for the purpose of operating Lake County's ambulance service. Lake County then contracted with Life EMS to provide two ambulances a day to service the county. In 2002, plaintiff discovered that Life EMS was using one of the ambulances to transport residents of other counties in nonemergency circumstances. She informed the county board of commissioners (hereinafter "the board") and other county officials that Life EMS was in breach of the contract, which posed a threat to the health and safety of county residents.

Additionally, on September 28, 2004, as authorized by the board, $50,000 was transferred from the ambulance account to a 911 account to use for a "mapping project." Plaintiff testified that on November 1, 2004, during a mapping meeting, plaintiff objected to the transfer, claiming that it violated the millage proposal and explaining that she had obtained a grant to cover the cost of the mapping project. She further stated that she had previously made similar objections regarding the transfer to the board and at a county finance committee meeting. Later, the board voted to return the funds to the ambulance account, which occurred on November 12, 2004. Also, on November 10, 2004, the board voted to merge two county employment positions. As a result of the merger, plaintiff's position was eliminated. Plaintiff received official notice of her termination on December 22, 2004, which explained that her position was eliminated because of "budget problems" and that the county was "forced to take cost cutting measures in order to

3

balance its budget." However, according to the proposed county budget as of October 29, 2004, the position of 911 director was fully funded at that time.

In January 2005, plaintiff filed a whistleblower claim under MCL 15.362,[1] asserting that she was terminated as result of her complaints regarding the funds transfer and Life EMS's ambulance service. Defendants filed a motion for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff had not met her burden of establishing a prima facie case under the WPA because plaintiff did not engage in "protected activity" and had not provided sufficient evidence to support causation. The trial court denied defendants' motion, and the jury returned a verdict in plaintiff's favor. Defendants appealed, and the Court of Appeals, holding that plaintiff was not engaged in protected activity under the WPA, reversed the trial court's denial of defendants' motion and remanded the case to the trial court for the entry of an order granting summary disposition to defendants. *Debano-Griffin v Lake Co*, unpublished opinion per curiam of the Court of Appeals, issued October 15, 2009 (Docket No. 282921).

---

[1] MCL 15.362 states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

4

Plaintiff sought leave to appeal, and, in lieu of granting leave to appeal, this Court reversed the judgment of the Court of Appeals and remanded the case to that Court for consideration of the argument raised by defendants but not addressed by the Court of Appeals during its initial review of the case. *Debano-Griffin v Lake Co*, 486 Mich 938 (2010). On remand, the Court of Appeals held that plaintiff had failed to establish a genuine issue of material fact on the causation element of her claim, relying primarily on *West*, and again reversed the trial court's order denying defendants' motion for summary disposition. *Debano-Griffin v Lake Co (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued August 25, 2011 (Docket No. 282921). We granted plaintiff's application for leave to appeal to consider "(1) whether the plaintiff established a causal connection between her protected activity and the adverse employment action" and

> (2) whether a whistleblower may challenge an adverse employment decision, which is claimed to be a matter of business judgment that was based on a fiscal or budgetary reason, as a mere pretext over the defendants' assertion that the separation of powers principle prevents the judiciary from examining the budgetary decisions of a legislative body. [*Debano-Griffin v Lake Co*, 491 Mich 874 (2012).]

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 397; 572 NW2d 210 (1998). Because defendants focused their argument supporting their motion for summary disposition on MCR 2.116(C)(10), we must ask whether a genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the "record which might be developed . . . would leave open an issue upon which reasonable

5

minds might differ." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (citations and quotation marks omitted). Likewise, this Court reviews de novo constitutional questions, including those concerning the separation of powers. *People v Garza*, 469 Mich 431, 433; 670 NW2d 662 (2003).

## III. ANALYSIS

Under the WPA, a plaintiff may establish a prima facie case by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) "a causal connection exists between the protected activity" and the adverse employment action. *Chandler*, 456 Mich at 399.[2] However, the only issue that we must decide in this case is causation. Because whistleblower claims are analogous to other antiretaliation employment claims brought under employment discrimination statutes prohibiting various discriminatory animuses, they "should receive treatment under the standards of proof of those analogous [claims]." *Shallal*, 455 Mich at 617. Specifically, this case requires application of the burden-shifting framework set forth in *McDonnell Douglas*. See, e.g., *Hazle*, 464 Mich at 462-466 (applying the *McDonnell Douglas* framework in the context of alleged discrimination in employment).

Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the

---

[2] This Court has previously determined that plaintiff was engaged in a "protected activity," see *Debano-Griffin*, 486 Mich 938, and there is no dispute that an "adverse employment action" was taken against plaintiff.

whistleblowing act and the employer's adverse employment action. See *Hazle*, 464 Mich at 462-463. A plaintiff may "'present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful [retaliation].'" *Id*. at 462, quoting *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 537-538; 620 NW2d 836 (2001). Once a plaintiff establishes a prima facie case, "a presumption of [retaliation] arises" because an employer's adverse action is "more likely than not based on the consideration of impermissible factors"—for example, here, plaintiff's protected activity under the WPA—if the employer cannot otherwise justify the adverse employment action. *Hazle*, 464 Mich at 463 (citations and quotation marks omitted).

The employer, however, may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a "motivating factor" for the employer's adverse action. *Id*. at 464-465. "[A] plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful retaliation]." *Id*. at 465-466 (citations and quotation marks omitted).

Against this backdrop, we must now determine whether plaintiff established a prima facie case of unlawful retaliation and, if so, to what extent plaintiff may argue that defendants' budgetary justification for the elimination of her position was pretextual.

## A. PLAINTIFF'S PRIMA FACIE CASE

We hold that the Court of Appeals erred when it misapplied *West* to conclude that plaintiff had failed to establish her prima facie case because she did not create a genuine

7

issue of material fact regarding causation under the WPA. In *West*, 469 Mich at 186, a majority of this Court stated that "a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation" when retaliation is claimed. *Id*.

In the present case, plaintiff does not rely solely on the fact that defendants eliminated her position *after* she engaged in protected activity. To the contrary, plaintiff presented evidence of a causal link that shows more than a "coincidence in time." *Id*. at 186. Indeed, *during* a 12-day period when plaintiff made various complaints regarding the funds transfer and ambulance services, plaintiff's position went from fully funded to nonexistent. From this, a rational juror could infer that the board had already decided to fund plaintiff's position until she publicly voiced her complaints. See *Hazle*, 464 Mich at 462. This is especially so because one reasonable conclusion is that the county's financial situation could not have deteriorated in 12 days to the point that it had to consider extreme cost-saving measures at that particular time.

In addition, the fact that the same entity that made the decision to eliminate plaintiff's position, the board, was also the direct recipient of plaintiff's complaints strengthens the causal link between plaintiff's protected activity and defendants' adverse action because it is reasonable to infer that the more knowledge the employer has of the plaintiff's protected activity, the greater the possibility of an impermissible motivation. Similarly, it is reasonable to conclude that the more an employer is affected by the plaintiff's whistleblowing activity, the stronger the causal link becomes between the

8

protected activity and the employer's adverse employment action. In this case, the board heeded plaintiff's advice and returned the transferred funds back into the ambulance fund. The fact that the board remedied its prior and potentially unlawful action lends support to plaintiff's position that defendants, because of plaintiff's complaints, were forced to do something that they would not have otherwise done and, thus, a reasonable inference may be drawn that the board was motivated to eliminate plaintiff's position *because of* her complaints.[3]

When viewed in a light most favorable to plaintiff, the foregoing facts support a reasonable inference that plaintiff was the victim of unlawful retaliation, which establishes her prima facie case and gives rise to a rebuttable presumption that defendants unlawfully retaliated against plaintiff by eliminating her position. The next step in the analysis requires that we consider the extent to which plaintiff may rebut defendants' facially legitimate reason for its adverse action—that the board eliminated plaintiff's position because of the county's impending financial crisis.

---

[3] In *West*, 469 Mich at 185, a majority of this Court noted that "[t]he evidence does not show that either of the supervisors, whom plaintiff allegedly informed about the call to the police, viewed the call as a matter of any consequence. Nor was either supervisor involved in the decision to discharge plaintiff." I continue to agree with Justice MARILYN KELLY's *West* dissent; however, the foregoing statement explains that when the same individual (or in this case the board) is the recipient of or affected by the plaintiff's whistleblowing activity, the inference that the employer unlawfully retaliated against the plaintiff becomes stronger.

## B. PLAINTIFF'S ABILITY TO SHOW PRETEXT

As previously stated, defendants may rebut the presumption of retaliation and, thus, are entitled to summary disposition if they offer a legitimate justification for the elimination of plaintiff's position unless plaintiff can show that defendants' justification was a pretext for unlawful retaliation. Defendants claimed that the board eliminated plaintiff's position out of economic necessity and, in support of their motion for summary disposition, offered an audit report that, according to defendants, showed that the county was suffering financial strain and required budget cuts. Defendants also offered the affidavit of Shelly Myers, the Lake County Clerk and Register of Deeds, which stated that the county was facing "severe financial difficulties." Plaintiff responded, claiming that defendants' budgetary justification was pretextual and, instead, the board's motivating factor for the elimination of her position was punishment for her complaints about the board's allegedly illegal transfer of funds from the ambulance fund.

Defendants argue that plaintiff cannot challenge defendants' budgetary justification because any challenge would either impermissibly question defendants' "business judgment" or unconstitutionally require judicial review of a legislative body's policy decision, violating the separation of powers. We disagree.

### 1. BUSINESS-JUDGMENT RULE

Regarding whether plaintiff may question defendants' "business judgment," we stated in *Hazle*, 464 Mich at 476, that a "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise,

10

shrewd, prudent, or competent." (Citation and quotation marks omitted.) And similarly, in *Dubey v Stroh Brewery Co*, 185 Mich App 561, 565-566; 462 NW2d 758 (1990), the Court of Appeals held that

> [t]here are three ways a plaintiff can establish that a defendant's stated legitimate, nondiscriminatory reasons are pretexts: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext.

In this case, plaintiff did not question whether the decision to eliminate her position was "sound" or assert that it ineffectively combated the county's alleged financial crisis. Rather, plaintiff asserted that defendants' proffered justification was false or had no "basis in fact." *Id*. at 565. In other words, plaintiff questioned whether defendants' decision was in fact an economic decision by questioning the propriety of the county's audit report and the credibility of Myers. Specifically, plaintiff identified financial figures in the audit report that suggested that the county was not facing a budgetary crisis. Also, plaintiff discounted Myers's credibility by offering the minutes of a September 2004 county personnel committee meeting during which several county officials, including Myers, requested a pay raise in 2005. Because defendants relied on Myers's representation of the county's financial status to show that the board based its decision to eliminate plaintiff's position on legitimate budgetary concerns, arguably Myers's credibility was in issue, presenting a question for the trier of fact with regard to whether defendants actually offered a legitimate justification for the board's decision. See *Brown v Pointer*, 390 Mich 346, 354; 212 NW2d 201 (1973) (stating that "where the

11

truth of a material factual assertion of a movant's affidavit depends on the affiant's credibility, there inheres a genuine issue to be decided at a trial by the trier of fact and a motion for summary judgment cannot be granted").

Moreover, even if defendants' position that the county was facing economic hardship had a "basis in fact," plaintiff nonetheless provided evidence to show that defendants' budgetary justification was "not the actual factor[] motivating the decision . . . ." See *Dubey*, 185 Mich App at 565-566. For example, plaintiff provided the deposition testimony of James Martin, who worked at Lake County Central Dispatch. He testified that during 2005 and 2006 defendants hired additional full-time employees. Plaintiff also provided the county's budget worksheet for 2005, which, in the budget-request column, indicated that several 911 dispatchers would be given raises. Viewing this evidence in the light most favorable to plaintiff, it is reasonable to conclude that even if the county was facing economic difficulties, those difficulties were not the board's "motivating factor" when it eliminated plaintiff's position. See *Hazle*, 464 Mich at 465.

Thus, plaintiff has successfully established a genuine issue of material fact regarding the causation element of her whistleblower claim because, when viewed in the light most favorable to plaintiff, reasonable minds may differ with regard to whether defendants' facially legitimate economic motivation was based in truth or whether plaintiff's additional evidence showed that the motivating factor for the board's adverse decision was unlawful retaliation.

## 2. SEPARATION OF POWERS

Equally unpersuasive is defendants' alternative argument: that despite the fact that plaintiff might have offered sufficient evidence to create a triable issue of fact regarding causation, plaintiff may not question the board's decision to eliminate her position because it would require judicial review of a legislative policy determination, violating the separation of powers. Although defendants' argument conflates legislative immunity with separation of powers, we hold that neither doctrine precludes plaintiff's claim or ability to challenge defendants' budgetary justification for eliminating plaintiff's position as a pretext for unlawful retaliation under the WPA.

Defendants argue that the board is a legislative body and the board's elimination of plaintiff's position was a legislative act. Regarding the latter assertion, defendants cite *Bogan v Scott-Harris*, 523 US 44; 118 S Ct 966; 140 L Ed 2d 79 (1998). In *Bogan*, the United States Supreme Court held that the termination of the plaintiff's *position* was legislative in nature because the discretionary policy decision "reach[ed] well beyond the particular occupant of the office"; thus, the defendants, local city legislators, were entitled to immunity. *Id.* at 49-51, 55-56. *Bogan* further reasoned that the determination of whether an action is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Indeed, this Court has reached a similar conclusion regarding executive immunity. In *American Transmissions, Inc v Attorney General*, 454 Mich 135, 143; 560 NW2d 50 (1997), we stated that "[t]he Legislature's grant of immunity . . . is written with utter clarity. We need not reach the

concern that a malevolent-heart exception might not be workable, since the Legislature has provided no such test."[4]

However, defendants' argument ignores the fact that the WPA expressly waives legislative immunity, making the act fully applicable to public employers. In *Anzaldua v Band*, 457 Mich 530, 551-552; 578 NW2d 306 (1998), we stated that "[t]he Legislature expressly applied the act to the state by including the state and its political subdivisions in the definition of 'employer.' See MCL 15.361(b); MSA 17.428(1)(b). Because the state is expressly named in the act, it is within the act's coverage." And notably, *Anzaldua* explained that the waiver is consistent with the design of the WPA to "protect the public from unlawful conduct by corporations and government bodies . . . by removing barriers to the reporting of violations of law by employees." *Id.* at 533. Thus, plaintiff's claim is not barred by legislative immunity.[5]

Considering the merits of defendants' separation-of-powers argument, the Michigan Constitution states that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided

---

[4] See MCL 691.1407(5), which states that "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority."

[5] While *Bogan* and MCL 691.1407(5) involve the extent to which an individual legislator may be immune from liability, this case is arguably distinguishable because only the liability of the board as a legislative body is at issue. Thus, we decline to address whether the naming of an individual board member as a defendant would have changed the outcome of this case.

14

in this constitution." Const 1963, art 3, § 2. The authority of local governments derives from article 7 of Michigan's 1963 Constitution and from the Legislature. See Const 1963, art 7, § 1; see, also, *City of Lansing v Edward Rose Realty, Inc*, 442 Mich 626, 632 n 5; 502 NW2d 638 (1993). The Constitution states that county governments "shall have legislative, administrative and such other powers and duties *as provided by law*." Const 1963, art 7, § 8 (emphasis added).[6] And the Legislature has delegated to county government the authority to "[e]stablish rules and regulations in reference to the management of the interest and business concerns of the county as the board considers necessary and proper in all matters not especially provided for in this act or *under the laws of this state*." MCL 46.11(m) (emphasis added).

In the present case, despite the board's authority to make budgetary decisions, judicial review of plaintiff's whistleblower claim, which asserts that the board's budgetary justification for her termination was pretextual, does not violate the separation of powers. We have held that

> [i]t is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the *legitimate* discretion of any other department of government. *So long as they do no illegal act*, and are doing business in the range of the powers committed to their exercise, no outside authority can intermeddle with them . . . . [*Detroit v Wayne Co Circuit Judge*, 79 Mich 384, 387; 44 NW 622 (1890) (emphasis added).]

See, also, *Veldman v Grand Rapids*, 275 Mich 100, 113; 265 NW 790 (1936) (explaining that a court's inquiry into municipal affairs is limited to situations in which there exists "a

---

[6] Const 1963, art 7, § 8 refers to county boards of supervisors, but Const 1963, art 7, § 2 permits "the organization of county government in form different from that set forth in this constitution . . . ."

malicious intent, capricious action or corrupt conduct, something which shows the action of the body whose acts are complained of did not arise from an exercise of judgment and discretion vested by law in them"). As previously stated, plaintiff does not argue that the board's decision to eliminate her position was a product of unsound or unwise judgment. Rather, plaintiff argues that the board's decision was *unlawful* under the WPA and, thus, its decision fell outside the otherwise legitimate discretion afforded to the board by the Constitution and the Legislature. Thus, the trial court, by merely providing plaintiff a forum in which to litigate her statutory claim under the WPA, did not infringe the board's legitimate exercise of its judgment and discretion.

Accordingly, given that the WPA expressly waives legislative immunity, we hold that the question whether the board *lawfully* exercised its authority when it eliminated plaintiff's position is subject to judicial review. To hold otherwise would essentially allow defendants an impenetrable defense because plaintiff lacked direct evidence of retaliation and would render futile the burden-shifting framework of *McDonnell Douglas*.

## IV. CONCLUSION

In summary, we hold that the *McDonnell Douglas* framework applies to plaintiff's claim under the WPA because plaintiff lacked direct proof of a causal connection showing that the board possessed a retaliatory motivation when it eliminated her position. Additionally, the Court of Appeals erred when it concluded that plaintiff failed to show more than a temporal relationship between the protected activity and the adverse employment action. In this case, plaintiff provided additional evidence to establish her

16

prima facie case—particularly, the fact that plaintiff's position became unfunded within 12 days, which overlapped with when plaintiff engaged in the protected activity.

Lastly, we hold that plaintiff successfully rebutted defendants' proffered budgetary justification for the board's adverse decision. And plaintiff's ability to challenge the motives of the board did not call into question the board's business judgment because plaintiff's argument was that the budgetary decision had no basis in fact, not that its decision was unwise. Similarly, the trial court, by entertaining plaintiff's argument, did not unconstitutionally infringe on the board's legislative function in violation of the separation of powers.

Thus, because plaintiff presented sufficient evidence to conclude that reasonable minds could differ regarding the board's true motivation for eliminating plaintiff's position, plaintiff raised a genuine issue of material fact regarding causation and defendants were not entitled to summary disposition. We reverse the judgment of the Court of Appeals, reinstate the trial court's denial of defendants' motion for summary disposition, and reinstate the trial court's order entering judgment in favor of plaintiff.

> Michael F. Cavanagh
> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly

ZAHRA, J., took no part in the decision of this case because he was on the Court of Appeals panel that issued the October 15, 2009, opinion.

MCCORMACK, J., took no part in the decision of this case.

17