# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL ANN ANDZELIK,

      Plaintiff-Appellant,

and

MICHIGAN HEAD & SPINE INSTITUTE, P.C.,

      Intervening Plaintiff,

v

AUTO CLUB INSURANCE ASSOCIATION,
a/k/a AAA,

      Defendant,

and

DIANE LYNN WILLARD,

      Defendant-Appellee.

UNPUBLISHED
February 11, 2016

No. 324281
Wayne Circuit Court
LC No. 13-008710-NI

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

In this automobile negligence action, plaintiff appeals as of right an order granting defendant's[1] motion for summary disposition. For the reasons below, we affirm.

This case arises from injuries sustained by plaintiff as the result of an automobile accident with defendant. On July 4, 2012, plaintiff was driving her car in the parking lot of an apartment complex in Belleville, Michigan. Defendant was backing out of a parking spot when

---

[1] Plaintiff's action against Auto Club Insurance Association (AAA) was dismissed below, and AAA is not a party to this appeal. Accordingly, all mentions of "defendant" refer to Diane Lynn Willard.

-1-

she hit the back, passenger side of plaintiff's vehicle. Plaintiff filed a third-party negligence claim against defendant, alleging that she suffered a "serious impairment of body function" as a result of the accident. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had not made a threshold showing that any injury resulting from the accident affected her general ability to lead her normal life. The trial court concluded that plaintiff had not satisfied the threshold showing set forth in MCL 500.3135(1), and that there was no genuine issue of material fact regarding whether plaintiff's accident-related injuries affected her general ability to lead her normal life. Accordingly, the court granted defendant's motion for summary disposition.

On appeal, plaintiff argues that there is a genuine issue of material fact regarding whether her accident-related injuries affected her general ability to lead her normal life, and, therefore, that there is a genuine issue of material fact regarding whether she sustained a serious impairment of body function. We disagree.

We review de novo a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). When deciding a motion for summary disposition, courts must consider the evidence submitted in the light most favorable to the nonmoving party. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Likewise, all reasonable inferences are to be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). Summary disposition is proper if the evidence fails to establish a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if the record leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

MCL 500.3135(1) provides that "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." The statute defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Whether a plaintiff has suffered a serious impairment of body function is a question of law for the trial court if "there is no factual dispute regarding the nature and extent of the person's injuries that is material to determining whether the threshold standards are met." *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010) (quotation marks omitted). If a material factual dispute exists, however, the trial court should not decide the issue as a matter of law. *Id*. at 193-194. When a court determines that it may decide the threshold issue as a matter of law, the court must engage in a three-pronged analysis to assess whether the evidence establishes "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *Id*. at 195. At issue in this appeal is the third prong, that is, whether plaintiff's injuries affected her general ability to lead her normal life.

An impairment is commonly understood to affect a person's general ability to lead his or her normal life if it has "an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. Determining the effect or influence of the impairment on a plaintiff's ability to lead a normal life necessitates "a comparison of the

plaintiff's life before and after the incident," which is a fact specific inquiry that must be decided on a case-by-case basis. *Id*. A person's general ability to lead his or her normal life need only be "affected," not destroyed. *Id*. Therefore, courts should not solely consider whether the impairment caused a plaintiff to completely cease a pre-accident activity; rather, it should consider "whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. "[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected" and there is no requirement of permanency to meet the threshold. *Id*. at 203.

In this case, the trial court did not err by concluding that plaintiff failed to establish the third prong of the analysis because the record evidence revealed no measurable difference between her normal life before and after the accident. Before the accident, plaintiff had a substantial medical history of various conditions, including fibromyalgia, neck pain, shoulder pain, hip and back pain, arm pain and numbness, migraine headaches, endometriosis, pneumonia, frequent sinusitis and bronchitis, jaw pain, ear pain, asthma, arthritis in both knees, osteoarthritis of the cervical spine, thyroid problems, anxiety, depression, panic disorder, and post-traumatic stress disorder. In 2001, plaintiff reported to her doctor that she began having difficulties with lower back, upper back, shoulder, hip, and leg pain after an automobile accident approximately 15 years earlier. As part of her treatment, plaintiff took medications for her various conditions, including narcotics for pain management. She testified that she had been on pain medication for many years before the accident at issue. Plaintiff also testified that she received injections in her shoulders and back to alleviate pain.

In March of 2009, plaintiff had surgery on her neck. The surgeon noted that plaintiff had a "longstanding history of chronic pain" and performed a cervical discectomy with fusion to repair a herniated disk. Plaintiff testified that the surgery significantly improved her neck pain. In May of 2009, plaintiff fell and injured her knee, which required knee surgery. Further, plaintiff had a box fall on her head, which she reported to her doctor in January 2010 as causing "pain in her right arm as well as numbness in her first, second, and third digits" and "some stiffness in the neck on the left side."

Plaintiff testified that, as a result of the automobile accident on July 4, 2012, she had worsening pain in her neck, arm, leg, and back, and the pain was different from the pain she experienced before the cervical spine surgery. Yet, she waited four days to see a doctor about her symptoms. She had subsequent visits to various doctors, but generally presented with symptoms other than neck and back pain and did not attribute her symptoms to the automobile accident. The visit on September 19, 2013, is notable because plaintiff complained of symptoms that included chronic backache, anxiety, and pain in the neck, back, shoulders, legs, and knees, all of which were identical to her pre-accident conditions.

It was not until nine months after the accident, following a visit with the doctor who performed her spinal surgery, that plaintiff's medical records specify an injury to her neck and back from the automobile accident that are deemed a "complete disruption" of the prior fusion. Plaintiff's doctor attributed the cause or significant aggravation of the ailments to the automobile accident and recommended surgery. However, plaintiff has not followed her doctor's recommendation to have surgery and is receiving treatment with a holistic doctor since her move to Florida in 2013. She testified that it is her goal to ultimately stop taking all medications.

Further, plaintiff testified that, as a result of the accident, she does not participate in recreational activities. Specifically, she testified that she cannot go out to eat, go walking, fish, play pool, dance, and watch her kids bowl. In addition, plaintiff alleged that she no longer plays bingo, does not crochet, and does not do anything because she cannot sit for more than 10 to 15 minutes. However, plaintiff does not need assistance with self-care. Although plaintiff claimed to need help with household chores, she did not request attendant care and her medical records show that such help was needed with her pre-accident condition as well. When asked about how she traveled to Michigan from Florida for her deposition, plaintiff testified that she was a passenger in a vehicle and traveled the approximate 20 to 22 hours "all the way through," making about seven or eight stops. Plaintiff agreed that, although in pain, she had been able to sit having her deposition taken for about an hour and 20 minutes without a break. There was no evidence that plaintiff participated in the group recreational activities she mentioned, other than fishing, with frequency. Rather, her medical history indicates that her pre-accident level of activity was generally sedentary because of her pain and depression. Both before and after the accident, plaintiff was unemployed and receiving disability benefits.

On this record, we conclude that plaintiff's description of her life after the accident is not measurably different from her life before the accident. Her recreational and domestic activities are nearly the same. Plaintiff was disabled and unable to work before the accident, just as after it. She was burdened with similar medical conditions both before and after the accident and was taking many of the same medications. As the trial court noted, plaintiff's medical condition appears to have even improved following her move to Florida. Based on the record evidence, the trial court did not err by concluding that there was no appreciable difference in plaintiff's normal life before and after the automobile accident, and that, consequently, plaintiff was not entitled to recover noneconomic damages.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ /Michael F. Gadola

-4-