*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD MARSH,

        Plaintiff,

and

MARK RAGSDALE and CHERYL A. THOMAS, Personal Representative of the ESTATE OF JOSEPH E. THOMAS, JR.,

        Plaintiffs-Appellees,

v

CITY OF ECORSE and LAMAR TIDWELL,

        Defendants-Appellants.

UNPUBLISHED
December 13, 2024
9:56 AM

No. 368354
Wayne Circuit Court
LC No. 21-002151-CD

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

In this Whistleblower's Protection Act (WPA), MCL 15.361 *et seq.*, matter, defendants, the City of Ecorse ("Ecorse") and Mayor Lamar Tidwell ("Tidwell") (collectively, "defendants"), appeal by leave granted[1] the trial court's order denying their motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

---

[1] *Marsh v City of Ecorse*, unpublished order of the Court of Appeals, entered March 21, 2024 (Docket No. 368354).

## I. BACKGROUND

This matter stems from the employment of Mark Ragsdale ("Ragsdale") and Joseph E. Thomas, Jr. ("Thomas")[2] (collectively, "plaintiffs") by Ecorse. City Administrator, Richard Marsh ("Marsh"), originally a plaintiff in this matter but later dismissed with prejudice, hired Thomas as Ecorse's Director of Public Safety in October 2020. Marsh hired Ragsdale as Ecorse's Director of Public Works in November 2020. Thomas and Ragsdale reported to Marsh. Tidwell was the Mayor of Ecorse and "has the same rights as any councilperson."

In October 2020, Marsh directed Thomas to investigate Tidwell regarding an alleged fraudulent transfer of a city vehicle by an Ecorse police officer to Tidwell. Thomas found: "[Tidwell's] actions were in violation of the City [of] Ecorse['s] Charter. . . . [Tidwell] knew or should have known the vehicle was not purchased according to law. . . ." The results of the investigation were reported to the City Council in November 2020. Marsh was directed by the City Council to investigate complaints concerning overbilling by water and sewer contractors to the Department of Public Works. Marsh directed Ragsdale to investigate the matter. In particular, there was an alleged kickback scheme involving Ecorse city officials. In November 2020, the results of this investigation were reported to the City Council.

In January 2021, Tidwell and Ecorse City Attorney, Ed Plato, approached Ragsdale with a prefilled separation agreement and resignation letter for Ragsdale to sign. In January 2021, Tidwell and Plato also approached Thomas with a prefilled separation agreement and a letter of resignation for Thomas to sign. Darcel Brown, an Ecorse City Councilperson, testified there was no recommendation and approval by the City Council, and no compliance with the City Charter, allowing Tidwell and Plato to negotiate these resignations with plaintiffs. On March 12, 2021, Ragsdale notified the City Council he was resigning as director of public works "as a result of the city creating an intolerable retaliatory work environment." Thomas's employment with Ecorse was terminated in 2021 by the City Council.

Plaintiffs filed a complaint and a jury demand. The complaint was amended a day later and included three counts: (I) discrimination by defendants under the WPA; (II) retaliation by defendants under the WPA; and (III) defamation by Tidwell as to Marsh. Defendants' filed an answer and affirmative defenses to plaintiffs' amended complaint. Marsh voluntarily dismissed his claims with prejudice.

Defendants moved for summary disposition, arguing plaintiffs did not establish a prima facie case under the WPA. Plaintiffs responded to defendants' motion for summary disposition, arguing there were questions of fact for a jury to decide. The trial court held a hearing on defendants' motion. As to the first element, the trial court found, "there's clearly protected activity given the two investigations[.]" Regarding the second element, the trial court stated: "Thomas . . . was discharged and the claim here is that Ragsdale was constructively discharged based on the conditions. Which brings us to three, is there a causal connection between the protected activity and the discharge for the . . . alleged . . . constructive discharge for Ragsdale." The trial court

---

[2] Thomas passed away on October 2, 2022. Cheryl A. Thomas, as personal representative of Thomas's estate, was substituted as plaintiff.

noted defendants "knew of the investigations . . . there's no question about knowledge in this case." The trial court stated: "[T]hese Defendants . . . did not view what happened in these investigations . . . as insignificant or inconsequential. They were involved in . . . the discharge of Thomas and certainly the conditions that Ragsdale alleges were intolerable, the[y] were involved in that." The trial court noted: "[T]hese two Plaintiffs don't have anything else on their employment record that would support either the termination or the constructive discharge." The trial court concluded:

> [I]f all we had in this case was just simply that Ragsdale and Marsh were terminated and constructively terminated close in time period, then perhaps under the standard for a [MCR 2.116(C)(10)] motion[,] Defense would prevail.
>
> We have other things here that show that certainly the [Defendants] were aware of these reports, they were concerned with them. They certainly were involved in the decisions. . . .
>
> But the Court only has to look at this from what's required under [MCR 2.116(C)(10)] and as we sit here today, the Court can't conclude that there's no issue of fact on those things. It's not the Court's job to decide whose case is better or whose case is stronger, the Court just has to determine whether or not there's an issue of fact for the factfinder who's the jury to decide and there is. There is an issue of fact and who will ultimately prevail . . . that's for the jury to decide.
>
> So[,] for all those reasons the Court finds that the motion has to be denied at this point, there are questions that the Jury has to decide, and so that's going to be the ruling of the Court.

The trial court entered an order denying defendants' motion for summary disposition "for the reasons stated on the record." This appeal ensued and the trial court has issued a stay pending our decision in this matter.

## II. ANALYSIS

Defendants contend plaintiffs failed to establish a prima facie case under the WPA. We disagree.

"[This Court] review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A de-novo review means [this Court] review[s] the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). "A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Miller*

*Estate v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020). "We also review de novo whether the evidence establishes a prima facie case of retaliation under the WPA, which is a question of law." *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 5.

"The WPA prohibits an employer from taking adverse employment action against an employee who reports, or is about to report, a violation or suspected violation of law to a public body, verbally or in writing." *Green*, ___ Mich App at ___; slip op at 6. MCL 15.362 states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To assert a prima facie case under the WPA, a plaintiff must show "he or she was (1) engaged in protected activity as defined by the act, (2) was discharged or discriminated against, and that (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Green*, ___ Mich App at ___; slip op at 6.

> The plaintiff may rely upon either direct or indirect evidence of retaliation to establish a prima facie case under the WPA. If the plaintiff establishes a prima facie case, there is a presumption of retaliation, which the employer may rebut by offering a legitimate reason for its action. A plaintiff may still avoid summary disposition, however, by showing that a reasonable finder of fact could conclude that the reason offered by the defendant is a pretext for unlawful adverse employment action. [*Id*. at ___; slip op at 6 (citations omitted).]

Defendants did not contest plaintiffs met the first element to assert a prima facie case under the WPA. "A protected activity under the WPA is defined as reporting to a public body a violation of a law, regulation, or rule, being about to report to a public body such a violation, or being asked by a public body to participate in an investigation." *Id*. at ___; slip op at 6 (quotation marks and citation omitted).[3] The record supports that plaintiffs' respective investigations were reported to the City Council and law enforcement agencies. Plaintiffs satisfied the first element to assert a prima facie case under the WPA.

Regarding the second element, defendants did not contest that Thomas was terminated and received severance. Defendants contend Ragsdale resigned voluntarily from his position with

---

[3] "The underlying purpose of the WPA is the protection of the public. . . . Because the WPA is a remedial statute, it must be liberally construed to favor those whom the Legislature sought to protect." *Green*, ___ Mich App at ___; slip op at 6.

Ecorse and did not establish an adverse employment action was taken against him. This argument lacks merit. There is sufficient evidence creating a question of fact Ragsdale was constructively discharged. "A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 471-472; 957 NW2d 377 (2020) (quotation marks and citations omitted).

Ragsdale began investigating fraudulent billing statements from water and sewer contractors and an alleged kickback scheme implicating Ecorse city officials. In November 2020, Ragsdale provided updates to Tidwell and the City Council on the investigation and reported the results to law enforcement agencies. In January 2021, Tidwell and Plato approached Ragsdale and "handed" him a prefilled letter of resignation and separation agreement. Tidwell knew about the separation agreement, but denied telling Ragsdale to sign the letter of resignation. There is also evidence that Plato "advised" Ragsdale to sign the agreement, but he was not being terminated. However, Ragsdale reported the incident to Marsh, calling it "embarrassing," and stating he "will not be bullied or intimidated" and would not sign any agreement. Ragsdale wrote in his resignation letter: "I have been threatened by Mayor Lamar Tidwell along with Attorney Plato by trying to force me to sign a resignation letter and separation agreement." In the same letter, Ragsdale stated: "I was told . . . my contract was null and void and that if I signed the two documents that were prefilled, the City would pay me the two months' severance. . . ." Ragsdale stated he was "threatened again the very next day and given the same alternative but with three months' severance pay to leave." Brown stated there was no City Council approval for Tidwell and Plato to negotiate Ragsdale's resignation. Tidwell acknowledged accompanying Plato to deliver the separation agreements and resignation letters to plaintiffs because Plato asked Tidwell to join him. On March 12, 2021, Ragsdale provided notice of his resignation. Considering the evidence in the light most favorable to plaintiffs, there exists a question of fact whether Ragsdale was constructively discharged and met the requirements of the second element to establish a prima facie case under the WPA. See *El-Khalil*, 504 Mich at 160.

As to the third element, defendants argue there is no evidence supporting a causal connection between the protected activity and any alleged adverse employment action. While it may be true that there is an absence of direct evidence, the law allows for indirect evidence of adverse employment action. Specifically,

> [a] plaintiff may present a rebuttable prima facie case on the basis of proofs from which a fact[-]finder could *infer* that the plaintiff was the victim of unlawful [retaliation]. Once a plaintiff establishes a prima facie case, a presumption of [retaliation] arises because an employer's adverse action is more likely than not based on the consideration of impermissible factors—for example, here, [the] plaintiff's protected activity under the WPA—if the employer cannot otherwise justify the adverse employment action.

> The employer, however, may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a

motivating factor for the employer's adverse action.  [A] plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful retaliation].  [*Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013) (quotation marks and citations omitted).]

"Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).  "Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action." *Id*. at 184.

Plaintiffs presented a rebuttable prima facie case from which a fact-finder could infer they were victims of unlawful retaliation.  As noted, Ragsdale was approached by Tidwell and Plato with a prefilled resignation letter and separation agreement after reporting the results of his investigation.  Similarly, in January 2021, Thomas was approached by Tidwell and Plato with a prefilled resignation letter and separation agreement.  There was no prior approval by the City Council for Tidwell and Plato to negotiate these resignations.  Regarding Ragsdale's resignation, Brown was aware of Ragsdale being "harassed" during three City Council meetings and "threatened" with termination if he did not resign.  Brown did not recall "specific details," but stated there was "badgering regarding [Ragsdale's] decision[-]making in regards to the city" by Tidwell, Ecorse City Councilperson LaTonya Lamb, and Ecorse City Councilperson Kimberly Alexander.

Thomas's investigation directly implicated Tidwell, alleging he obtained a city vehicle through a fraudulent transfer.  Ragsdale's investigation into overbilling by various city contractors alleged there was a kickback scheme involving Ecorse officials.  It is without dispute that the results of both the investigations were reported to the City Council and law enforcement agencies, and Tidwell and the City Council were fully informed of the investigations.  Although there is a question of fact regarding whether Ragsdale was constructively discharged, Thomas was terminated by the City Council.  See *Debano-Griffin*, 493 Mich at 178 ("[I]t is reasonable to conclude that the more an employer is affected by the plaintiff's whistleblowing activity, the stronger the causal link becomes between the protected activity and the employer's adverse employment action.").  In addition to the temporal proximity of the adverse employment actions and protected activity, the actions of approaching plaintiffs with prefilled resignation letters and separation agreements provides evidence from which a fact-finder could infer plaintiffs were the victims of retaliation.  See *id*. at 176.

Defendants "may be entitled to summary disposition if [they] offer[] a legitimate reason for [their] action. . . ." *Id*.  Defendants offered evidence of a legitimate justification for terminating Thomas's employment, including the fact that Tidwell opposed hiring Thomas initially because he preferred another candidate and had financial concerns related to Thomas's hiring.  Tidwell offered his own affidavit, in which he stated the employment decisions were unrelated to the investigations.  Instead, Thomas's contract was voided because it "violated the Charter," and the City Council approved the termination.

Tidwell voted in favor of having a forensic audit conducted regarding Ragsdale's investigation into the overbilling.  Defendants offered additional evidence that (1) there were no

improprieties with the billing, and (2) neither Tidwell nor any City Councilperson was involved in a kickback scheme. City Councilperson John Miller did not observe any "mistreatment" of plaintiffs during their employment with Ecorse. Miller had no knowledge that the decisions regarding the employment of plaintiffs were related to either of the investigations. City Councilperson Donald Agee, Jr., claimed to lack knowledge of anyone creating a "hostile work environment or constructively discharging either Marsh, Thomas, or Ragsdale." Agee did not have knowledge that Tidwell's employment decisions regarding plaintiffs were related to either investigation. Brown contended he lacked any knowledge Thomas's termination "had anything to do with the [] investigation." Brown was unaware of Tidwell or any city councilperson having an issue with Thomas's investigation. Brown did not have knowledge the decisions regarding Thomas's or Ragsdale's employment were related to either investigation.

"To avoid summary disposition after the employer offers such a reason, the plaintiff must show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action, i.e., that the employer's articulated legitimate reason was a pretext disguising unlawful animus." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 18; 891 NW2d 528 (2016) (quotation marks and citations omitted).

> A plaintiff can establish that a defendant's articulated legitimate . . . reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. The germane inquiry is whether the employer was motivated by retaliatory animus, not whether the employer is wise, shrewd, prudent, or competent. [*Id*. (quotation marks and citations omitted).]

Plaintiffs' best evidence, suggesting the legitimate reasons articulated by defendants were pretext disguising unlawful animus, is the undisputed fact that plaintiffs were approached with prefilled resignation letters and separation agreements to sign after their respective investigations occurred. These actions may establish that the reasons articulated by defendants were not the actual factors motivating their decisions. Although defendants articulate reasons why their decisions or actions could be considered prudent, there remains a question whether defendant's were "motivated by retaliatory animus." *Id*. Viewing the evidence submitted in the light most favorable to plaintiffs, it is reasonable to conclude, even if there were economic and prudent reasons justifying defendants' actions, those reasons were not the motivating factor when Thomas was fired or when Ragsdale was potentially constructively discharged. *Debano-Griffin*, 493 Mich at 176. Plaintiffs established a genuine issue of material fact regarding causation because, when viewing the evidence in the light most favorable to plaintiffs, reasonable minds may differ with regard to whether defendants' motivation was economical and prudent or whether plaintiffs' evidence established that the motivating factor was unlawful retaliation.

## III. CONCLUSION

The trial court properly denied defendants' motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney