*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY JOHNSON,

      Plaintiff-Appellant,

v

CITY OF DETROIT, MIKEL OGLESBY, LOIS PITTMAN, MARYANN WALSH, DEBRA WARE, and KELECHI N. AKINBOSEDE,

      Defendants-Appellees

and

OFFICE OF INSPECTOR GENERAL,

      Defendant.

UNPUBLISHED
August 05, 2025
11:23 AM

No. 367098
Wayne Circuit Court
LC No. 21-015461-CD

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

SWARTZLE, J., (*concurring*).

      I concur in full with the majority opinion. I write separately to point out a feature (some might say a bug) in our jurisprudence involving this state's civil-rights laws—namely, the requirement that parties and courts apply the *McDonnell Douglas* burden-shifting framework to claims of unlawful discrimination whenever there is no direct evidence of discrimination. For me, the *McDonnell Douglas* framework calls to mind a line from a classic 1980s movie, "Is that made up? That sounds made up."[1]

      To begin: Turn to the Appendix of this opinion and read the primary statutory prohibition of the Whistleblowers' Protection Act (WPA), MCL 15.362. Now read the burden-shifting framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792, 802-805; 93 S Ct 1817;

---

[1] Rusty Griswold, National Lampoon's *Vacation* (1983).

-1-

36 L Ed 2d 668 (1973), made applicable to the WPA by decisions like *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013).

Next, read the primary statutory prohibition of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2202(1)(a). Now read again the *McDonnell Douglas* burden-shifting framework, made applicable to the ELCRA by decisions like *Lytle v Malady*, 456 Mich 1, 27; 566 NW2d 582 (1997), vacated in part on other grounds 458 Mich 153; 579 NW2d 906 (1998). See Appendix.

And finally, read the primary statutory prohibition of the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1202(1)(a) and (b). Now read for the last time the *McDonnell Douglas* burden-shifting framework, made applicable to the PWDCRA by decisions like *Hall v McRea Corp*, 238 Mich App 361, 371; 605 NW2d 354 (1999), remanded on other grounds 465 Mich 919; 638 NW2d 748 (2001). See Appendix.

Your eyes do not deceive you—The framework is made up, as there is literally nothing in these or other civil-rights laws that resembles, or even hints at, the elaborate burden-shifting framework first announced by the U.S. Supreme Court in *McDonnell Douglas* and subsequently adopted by Michigan courts. Nor is there anything like this framework in our summary-disposition standards, most notably MCR 2.116(C)(10), which asks simply whether there is a genuine issue of material fact for trial.

The *McDonnell Douglas* framework was initially conjured as an evidentiary tool to help focus the parties and trial court, in the absence of direct evidence of discrimination, on the ultimate question, i.e., did the defendant unlawfully discriminate against the plaintiff? See *Lytle v Malady (On Rehearing)*, 458 Mich 153, 173 & n 19; 579 NW2d 906 (1998). Like any tool, the framework was meant to be used only when it would be useful in answering the ultimate question. See *id.* at 173 n 19; see also *Hazle v Ford Motor Co*, 464 Mich 456, 466; 628 NW2d 515 (2001). But, as we sometimes learn with hindsight, a mere tool can take on a metastasized life of its own, a legal frankenstein, if you will.

I do not claim originality in this observation. See, e.g., *Ames v Ohio Dep't of Youth Servs*, 605 US __, __; 145 S Ct 1540; __ L Ed 3d __ (2025), slip op, pp 6-14 (THOMAS, J, concurring) (discussing the lack of textual support for the burden-shifting framework in the context of Title VII and Rule 56 of the Federal Rules of Civil Procedure, and citing several concurring opinions by federal circuit court judges, including *Tynes v Florida Dep't of Juvenile Justice*, 88 F 4th 939, 952 (CA 11, 2023) (NEWSOM, J, concurring)). Nor do I claim that this framework was doomed from the start, as courts in the 1970s were grappling with a new body of civil-rights law, and some early guidance might well have been needed to sift the "unlawful discrimination" from the "lawful discretion."

I question, however, whether the burden-shifting framework has outlived its usefulness, as we now have decades of experience with the general framework of civil-rights laws. Against this questionable utility weigh the downside risks of the tool, which are significant. As Justice THOMAS recently observed, "the framework is incompatible with the summary-judgment standard [(i.e., is there a genuine issue of material fact)]; it fails to encompass the various ways in which a plaintiff could prove his claim; it requires courts to maintain artificial distinctions between direct and

circumstantial evidence; and it has created outsized judicial confusion." *Id.* at 10 (THOMAS, J, concurring). Today, it is the rare civil-rights case that does not force the parties and trial court to dance metaphorically through shifting burdens . . . to . . . and fro . . . and to again . . . in stark contrast to what these actors do in every other type of civil case—evaluate direct and circumstantial evidence, using the familiar tools of the Michigan Rules of Evidence, to determine whether, at the summary-disposition stage, there is a genuine issue of material fact under the standard set in statute, or at the trial stage, a party has met the applicable burden of proof under that statute.

More can be said on the continued usefulness (or lack thereof) of the *McDonnell Douglas* framework to this state's civil-rights laws. It is my hope that, in a future case, application of the framework will be arguably outcome determinative, and the continued viability of that framework will be ripe for an updated look by this Court or our Supreme Court.

This is not that case, however, and therefore I concur in the majority's opinion.

**APPENDIX**

| | |
|---|---|
| *McDonnell Douglas* (generic version) | First Step (prima facie case of discrimination): (1) plaintiff is a member of a protected class; (2) plaintiff suffers an adverse action; (3) plaintiff is otherwise qualified; and (4) circumstances give rise to an inference of unlawful discrimination.<br><br>Second Step: If plaintiff satisfies the first step, then there is a rebuttal presumption of discrimination, and defendant now has the burden to articulate a legitimate, non-discriminatory reason for the adverse action.<br><br>Third Step: If defendant satisfies the second step, then the presumption in favor of plaintiff dissolves, and the burden shifts back to plaintiff to show that defendant's stated reason is merely pretextual. |
| WPA | An employer shall not discharge, threaten, or otherwise discriminate against an employee . . . because the employee . . . reports or is about to report . . . a violation or a suspected violation of a law or regulation or rule . . . unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. MCL 15.362. |
| | |

| ELCRA | An employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, sexual orientation, gender identity or expression, height, weight, or marital status. MCL 37.2202(1)(a). |
| --- | --- |
| PWDCRA | Except as otherwise required by federal law, an employer shall not: (a) Fail or refuse to hire, recruit, or promote an individual because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position. (b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position. MCL 37.1202(1)(a) and (b). |

/s/ Brock A. Swartzle