# STATE OF MICHIGAN

# COURT OF APPEALS

---

KATHY DENNIS,

       Plaintiff-Appellant,

v

WEXFORD COUNTY SHERIFF'S
DEPARTMENT, WEXFORD COUNTY
SHERIFF, and COUNTY OF WEXFORD

       Defendants-Appellees.

UNPUBLISHED
June 7, 2016

No. 325574
Wexford Circuit Court
LC No. 13-024479-CD

---

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

In this employment dispute, plaintiff, Kathy Dennis, appeals by right the trial court's order dismissing her claim that defendants, Wexford County Sheriff's Department (the Department), Wexford County Sheriff, and the County of Wexford, retaliated against her in violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, after she reported that the county's animal control officers were illegally euthanizing animals and mishandling funds. On appeal, we conclude that the trial court erred when it dismissed her claim against the Department and Wexford County, but did not err when it dismissed her claim against the Sheriff and did not err when it denied her motion for summary disposition. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

Dennis formerly worked at the County's jail as a corrections officer, but began working as a part-time attendant at the Wexford County Animal Shelter on September 10, 2012. Although the job description encompassed only basic duties involving the animals, the maintenance of the facility, and assisting the public, Dennis expressed an interest in becoming an animal control officer and the shelter's animal control officers, Michelle Smith and Jessica Williams, allowed Dennis to participate in additional duties beyond those stated in the attendant's job description. Dennis testified that Smith also told her that her duties included supervising jail trustees and other volunteers who would feed and clean the animals and their cages, assist with animal euthanasia, answer the phone, input information into the animal shelter's computer, collect adoption fees, and manage the shelter's Petfinder adoption website.

-1-

After she accompanied other animal control professionals as part of her effort to become an animal control officer, Dennis related, she began to suspect that the shelter's staff were improperly euthanizing animals. She spoke to Smith and Williams about her concern that the animals were not being euthanized properly and they told her that they would euthanize the animals on their own from there on out. On December 6, 2012, she reported her suspicions along with her belief that the shelter's staff might be mishandling the shelter's funds to Undersheriff Trent Taylor. The Department initiated an investigation at around that time.

Dennis testified that she met with Lieutenant Richard Denison, who served as the day-to-day administrative supervisor for the shelter, on December 19, 2012. She stated that Denison restricted her duties at the shelter and specifically told her that she was only to be in the back dealing with the pets and trustees. Dennis said he also told her that he did not want her to work at the same time as Smith and Williams and that her hours would be cut accordingly. Dennis' work schedule remained the same, but, she explained, she was told that she had to call Smith each week to determine what hours she would be permitted to work at the shelter. As a result of this change, Dennis worked fewer hours.

Dennis again met with Denison on December 31, 2012, and surreptitiously recorded the meeting. At the meeting, Denison asked Dennis to return the key to the locker that held the shelter's drugs. He and Dennis also discussed what she believed to be retaliatory conduct directed at her. Because she was angry about the treatment she was receiving, Dennis turned in her keys and quit.

In February 2013, Dennis sued the Department, the County, and the Sheriff, Gary Finstrom. She alleged that the Department, the County, and the Sheriff retaliated against her by reducing her job responsibilities to the more basic duties of caring for the shelter animals, restricting her access to some shelter areas, no longer allowing her to enter shelter records on the computer, and by cutting her work hours after she reported what she believed were irregularities with the shelter's method of euthanasia and possible mishandling of the shelter's funds. She alleged that the changes to her conditions of employment were made in violation of the WPA.

After the parties filed cross-motions for summary disposition, the trial court denied Dennis' motion and granted the motion by the Department, the County, and the Sheriff. It determined that summary disposition was justified under MCR 2.116(C)(10) because there was no genuine issue of material fact regarding the existence of an adverse employment action or any causal connection between Dennis' protected activity and any allegedly adverse employment action. The court further concluded that Dennis' claim against the Sheriff must be dismissed under MCR 2.116(C)(10) because Dennis did not present evidence that the Sheriff was involved in any of the decisions affecting her employment. Finally, the trial court concluded that Dennis could not sue the Department because it was not a separate legal entity and thus did not qualify as an "employer" for purposes of the WPA.

Dennis now appeals in this Court.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

Dennis first argues that the trial court erred when it determined that she did not present sufficient evidence to establish a question of fact as to whether she suffered an adverse employment action and whether her engagement in protected activity had a causal relationship to the purportedly adverse employment action. We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A trial court may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 120. "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id.* A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

### B. ELEMENTS OF A WPA CLAIM

Under the WPA, it is unlawful for an employer to "discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report . . . a violation or a suspected violation of a law . . . ." MCL 15.362. To establish a prima facie violation of this statute, a plaintiff must allege and be able to prove that he or she "was engaged" in a protected activity, was "discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment," and that a "causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251-252; 848 NW2d 121 (2014).

The standard of proof required under the WPA is analogous to that required in other employment discrimination cases. *Debano-Griffin v Lake Co*, 493 Mich 167, 175-176; 828 NW2d 634 (2013). Barring direct evidence of retaliation, a plaintiff can rely on indirect evidence to set forth a prima facie case under the WPA from which a factfinder could infer that he or she suffered unlawful retaliation. *Id.* at 176. The burden then shifts to the defendant to articulate a legitimate business reason for the adverse employment action, similar to the analysis used in an employment discrimination case. *Id.* If a defendant does so, the burden returns to the plaintiff to establish that the legitimate reason offered by the defendant was merely a pretext for the adverse employment action. *Id.*

In *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 660; 653 NW2d 625 (2002), this Court explained:

> In order for plaintiff's claim to survive the motion for summary disposition, plaintiff must demonstrate that the evidence in the case is sufficient to permit a reasonable trier of fact to conclude that plaintiff's protected activity was a

motivating factor in the adverse action taken by the employer. In other words, a plaintiff must raise a triable issue that the employer's proffered reason was a pretext for retaliating against plaintiff's protected activity. A plaintiff can prove pretext either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. [Quotation marks and citations omitted.]

It is undisputed that Dennis was engaged in protected activity when she reported her concerns about the euthanasia procedures and possible misuse of shelter funds on December 6, 2012. The trial court, nevertheless, determined that Dennis failed to present evidence from which a reasonable jury could find that she suffered an adverse employment action.

The WPA prohibits an employer from, in relevant part, discharging or otherwise discriminating against an employee "regarding the employee's compensation, terms, conditions, location, or privileges of employment . . . ." MCL 15.362. Because the Civil Rights Act contains a similarly worded prohibition, see MCL 37.2202(1)(a) (prohibiting an employer from discharging or otherwise discriminating against an individual with respect to employment, compensation, or a term, condition, or privilege of employment on the basis of certain characteristics), this Court has applied the body of law discussing what constitutes an adverse employment action under the Civil Rights Act to the WPA. See *Smith v City of Flint (On Remand)*, ____ Mich App ___; ____ NW2d ____ (2015) (Docket No. 320437); slip op at 3-5. Our Supreme Court has, however, expressed some concern about applying the body of law that has developed to delineate the parameters of an adverse employment action in the civil rights context to the WPA, see *Wurtz*, 495 Mich at 251 n 14, but it has not yet clarified how that body of law is inconsistent with the statutory language. In any event, we need not determine whether the modification of Dennis' duties amounts to discrimination "against an employee regarding the employee's . . . terms, conditions, location, or privileges of employment" because Dennis presented sufficient evidence to establish a question of fact as to whether the County reduced her compensation by reducing her hours, which is plainly encompassed under the statute. MCL 15.362.

Although there was evidence that Dennis' scheduled hours and rate of compensation remained the same after she reported her suspected violations of law to Taylor, she testified that the County reduced her work days and hours after her report. Dennis testified that Denison told her that her hours were being cut because he felt that she could no longer work with Smith and Williams. She explained that she was told to call Smith before proceeding to work. When asked about specific days where she worked fewer hours, Dennis said that Smith would tell her that she was not needed or needed for fewer hours. She conceded at her deposition that she did not have documentation to corroborate her testimony, but reiterated that Smith orally told her that she was not needed.

Denison denied that anyone cut Dennis' hours, as did Smith. In addition, there was documentary evidence that permitted an inference that Dennis' schedule remained the same despite her testimony to the contrary. Notwithstanding this evidence, Dennis testified that the reduction in the number of actual hours that she worked was directly attributable to Denison through Smith. In evaluating this evidence, neither the trial court nor this Court is at liberty to judge the weight and credibility of the evidence in support of either position or determine facts.

-4-

*Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Rather, we must consider the evidence in the light most favorable to Dennis. *Maiden*, 461 Mich at 120. When viewed in that way, there is a question of fact as to whether Denison or Smith deliberately cut Dennis' hours and thereby reduced her compensation. Consequently, the trial court erred when it determined that there was no evidence that Dennis suffered an adverse employment action within the meaning of MCL 15.362.

Because of our resolution of this issue, we need not consider whether the other alleged changes to Dennis duties amounted to discrimination regarding the terms, conditions, locations, or privileges of Dennis' employment (that is, whether they are adverse employment actions) and need not decide whether she established that she was constructively discharged.[1] We do, however, disagree with the trial court's apparent belief that the changes to Dennis' duties which were not part of the job-description for an attendant at the shelter necessarily do not amount to discrimination regarding the terms, conditions, locations, or privileges of Dennis' employment. Denison admitted in the recorded conversation that Dennis' duties had been expanded to include duties that were not part of the job-description and nothing in the statute limits an employer's liability for unlawfully discriminating against an employee regarding the employee's terms, conditions, locations, or privileges to those terms, conditions, locations, or privileges that are identified in a written job description. Where there is a conflict in the evidence concerning the terms, conditions, locations, or privileges of the employee's employment, it is for the finder of fact alone to resolve the conflict. See *Marcott v Marquette, Houghton & Ontonagon R Co*, 47 Mich 1, 7; 10 NW 53 (1881) (warning that trial courts must not usurp the role of the jury, and stating that a trial court can only take a case from the jury where the evidence is "absolutely free from conflict").

The trial court also determined that Dennis failed to present evidence to establish a causal link between her protected activity and—in relevant part—the change to her compensation. "Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 184; 665 NW2d 468 (2003). A mere temporal sequence of events linking the activity and the subsequent employment action is not enough to satisfy this element; the employee must present evidence of "more than merely a coincidence" between the two events. *Id*. at 186. "To prevail, plaintiff had to show that his employer took adverse employment action *because* of plaintiff's protected activity[.]" *Id*. at 185 (emphasis in original).

> A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence. Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the employer's actions. To establish causation using

---

[1] On remand, the parties or trial court may reexamine whether the other actions amount to discrimination regarding Dennis' "terms, conditions, location, or privileges of employment" under MCL 15.362, or would meet the criteria for a constructive discharge.

circumstantial evidence, the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. Speculation or mere conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. In other words, the evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation. [*Shaw v Ecorse*, 283 Mich App 1, 14-15; 770 NW2d 31 (2009) (citations and quotation marks omitted).]

Dennis presented evidence that, if believed, would permit a reasonable jury to find that Denison altered her hours—or authorized Smith to alter her hours—because Dennis engaged in protected activity. Dennis recorded a conversation that she had with Denison in December 2012. The transcript of the conversation shows that Dennis believed that she was being mistreated because she reported unlawful activities at the shelter. While Denison claimed that Dennis was not being punished, he agreed that Dennis' duties had been altered because of the investigation and told her that the changes would last for the duration of the investigation. She presented evidence that the changes included substantial reductions in her duties, which included computer accounting, interactions with the public, and certain aspects of animal care. Denison's statement that the changes were related to the investigation is an admission that the changes to her duties directly arose from Dennis' decision to engage in protected activity. Moreover, Dennis presented evidence that the other employees—Smith and Williams—did not suffer similar changes as a result of the investigation and she presented evidence tending to suggest that the changes to her schedule were made to accommodate Smith and Williams. That is, Dennis presented evidence that she alone suffered adverse consequences as a result of the investigation even though the investigation ostensibly encompassed a review of the other employees' conduct. Under the totality of the circumstances, a reasonable fact-finder could infer that Denison ordered the changes—including the reduction in Dennis' hours—and compelled her alone to suffer the adverse consequences as retaliation for her decision to report possible misconduct at the shelter. The same evidence, however, could permit a reasonable fact-finder to conclude that the changes were in fact temporary and made to protect Dennis and the integrity of the investigation, rather than in retaliation. Consequently, these issues were for the fact-finder to resolve.

The Department and Wexford County did not offer a business reason for limiting Dennis' hours; instead, they denied that her hours had been reduced. As already noted, there was a question of fact as to whether Dennis' hours were reduced as a result of her decision to engage in protected activity. And, in the absence of evidence that the reduction in Dennis' hours had a legitimate business reason, the resolution of this dispute was for the jury. See *Debano-Griffin*, 493 Mich at 176. The Department and Wexford County did present evidence that the other changes were occasioned by her poor performance, but Denison's statement to Dennis that the changes were to protect her during the investigation directly contradicted that evidence. Thus, the evidence tending to establish a causal link between the changes in Dennis' hours and duties and her decision to report possibly unlawful activity would also allow a reasonable fact-finder to find that the proffered reasons were merely a pretext for unlawful retaliation. *Town v Mich Bell Tel Co*, 455 Mich 688, 697; 568 NW2d 64 (1997) ("The proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's stated reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory [or retaliatory] basis.").

-6-

The trial court erred when it determined that Dennis failed to establish a question of fact on her WPA claim. Accordingly, it erred when it dismissed her claim on that basis. However, because there was—at the very least—a question of fact as to whether any changes to Dennis' hours or duties were causally linked to her engagement in protected activity, the trial court did not err when it denied Dennis' motion for summary disposition.

## C. CLAIM AGAINST THE SHERIFF

Although we have concluded that the trial court erred when it dismissed Dennis' WPA claim on the ground that she failed to establish a prima facie case, we conclude that the trial court did not err when it dismissed the claim against Finstrom. There was significant evidence that Finstrom played no material role in the events at issue. Taylor testified that his duties included acting in Finstrom's stead when Finstrom was not available, and that he was responsible for the overall supervision of the agency. He stated that in early December 2012, he became aware of possible problems at the shelter from a sergeant at the corrections divisions. He spoke with Finstrom about the matter and told him he thought the department should investigate and Finstrom agreed.

Taylor stated that Dennis came to his office on December 19 and told him how she felt she had been mistreated. He denied telling her that any decision to cut her hours had been made by Finstrom. He did tell her that he would take it up with Finstrom, but he did not do so before Dennis quit. Denison similarly stated he never discussed Dennis' allegations with Finstrom.

Finstrom testified that he was made aware of Dennis' concerns, but did not remember when this occurred. He did not ask Denison about the allegations and never reviewed the results of the internal investigation. Finstrom also denied ever speaking with Denison about Dennis' hours. He stated that Denison did not state that he was taking any disciplinary action against Dennis. He recalled that he and Denison had "some discussion regarding her work output, not doing what she was supposed to be doing as far as her shelter attendant duties, and there were some problems with visitors—personal visitors." But he did not recall Denison saying that he would take any particular action and was not aware that Denison had taken any steps to alter Dennis' schedule or duties.

To contradict this evidence, Dennis presented her deposition testimony in which she stated that Taylor told her that Finstrom was aware that her hours were being cut and that her duties were being changed and that Taylor would try to talk to him to get them back for her. Nevertheless, she acknowledged that she never had a conversation with Finstrom about her allegations. She also admitted that it was her understanding that Denison made the decisions concerning the activities at the shelter, including her hours, job responsibilities, and access to the computer. She similarly acknowledged that she had no documentation that Finstrom made any decisions concerning her hours or her duties.

Dennis' assertion that Taylor told her that Finstrom was aware of the changes is not evidence that he was involved with the decision to change her hours or duties; Dennis conflates "awareness of" with "responsibility for" the disputed actions. Evidence that Taylor told Dennis that Finstrom was aware that her hours were being cut and that her duties were being changed does not establish that he actually caused the changes. In addition, Dennis acknowledged that

the actual shelter decisions were made by Denison, and this acknowledgement is supported by their recorded conversation. Dennis failed to present evidence sufficient for a reasonable jury to conclude that Finstrom was personally involved in the alleged adverse employment actions.

With respect to Dennis' contention that Finstrom is nonetheless vicariously liable, the Legislature has specifically provided that "[a] sheriff shall not be responsible for the acts, defaults, and misconduct in office of a deputy sheriff." MCL 51.70. This limits Finstrom's personal liability for Denison's actions. Cf. *Lockaby v Wayne Co*, 406 Mich 65, 77; 276 NW2d 1 (1979). Because the evidence, if believed, only implicates acts by Denison, the trial court did not err when it dismissed Dennis' claim against Finstrom.

## D. THE DEPARTMENT

Dennis also argues on appeal that the trial court erred when it determined that the Department was not an employer within the meaning of the WPA. Whether the Department is an employer under the WPA is a question of law that this Court reviews de novo.

In *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), our Supreme Court explained:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Footnotes omitted.]

> MCL 15.361 provides, in pertinent part:

> As used in this act:

> (a) "Employee" means a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied. Employee includes a person employed by the state or a political subdivision of the state except state classified civil service.

> (b) "Employer" means a person who has 1 or more employees. Employer includes an agent of an employer and the state or a political subdivision of the state.

> (c) "Person" means an individual, sole proprietorship, partnership, corporation, association, or any other legal entity.

The trial court agreed that the Department could not be sued under the WPA because it did not exist as a separate legal entity, but instead exists only as an agency of Wexford County. In *Bayer v Almstadt*, 29 Mich App 171; 185 NW2d 40 (1970), this Court held that the Macomb County Sheriff and the Macomb County Sheriff's Department could not be held liable for an alleged assault and battery of a prisoner by a deputy sheriff. This Court reasoned that the department could not be liable because it was an agency of the county, and was not liable under Const 1963, art 7, § 6.[2] *Id*. at 175. *Bayer* is not binding under MCR 7.215(J)(1), and in any event did not involve a claim under the WPA.

In *Leelanau Co Sheriff v Kiessel*, 297 Mich App 285; 824 NW2d 576 (2012), this Court discussed the veterans preference act (VPA), MCL 35.401 *et seq.*, when deciding whether the sheriff had unfettered discretion to discharge a deputy or whether the decision was subject to review under the VPA, which limits MCL 51.70 by providing that the sheriff may discharge deputies who were honorably discharged veterans only for just cause. *Id*. at 293-295. This Court noted that, although the sheriff is a constitutional officer, "nothing in the Constitution prevents the Legislature from limiting the sheriff's ability to discharge deputies at will" and determined that the provisions of the VPA could limit the sheriff's powers and that the language of the act controlled. *Id*. at 293. This Court then discussed whether the sheriff was a "public department" under the act and cited previous authority discussing this definition. *Id*. at 296. Notably the Court held that a sheriff's department can be implicated under a statutory scheme:

> It cannot be disputed that a sheriff and the sheriff's employees, colloquially known as a "sheriff's department," are " 'a distinct part of a governmental organization [.]' " [*Ellis v Common Council of Grand Rapids,* 123 Mich 567, 569, 82 NW 244 (1900)] (citation omitted). . . . Consequently, a sheriff and the sheriff's employees—a "sheriff's department"—is a "public department" within the meaning of the VPA because it is "an agency of the county." *Bayer v Macomb Co Sheriff*, 29 Mich App 171, 175, 185 NW2d 40 (1970). [*Id.*]

Even though the Department is an agency of the county, this does not itself preclude it from being deemed an employer under the WPA. Wexford County is a political subdivision of the state. The county is thus an employer under the WPA. MCL 15.361(b). However, an employer for the purposes of the act also "includes an agent of an employer." *Id*. Agent is not defined under the act. However, Black's Law Dictionary (6th ed), p 63, defines "agent" in part as "[o]ne who represents and acts for another under the contract or relation of agency." See also *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 557-560; 581 NW2d 707 (1998) (looking to the common-law definitions of agency and agent when deciding whether the Michigan Educational Special Services Association was an "agent" of the Michigan Education Association for purposed of the public employment relations act). Because

---

[2] Const 1963, art 7, § 6 provides in part that "[a] county shall never be responsible for [the sheriff's] acts, except that the board of supervisors may protect him against claims by prisoners for unintentional injuries received while in his custody."

the Department is an agency or "agent" of the County, we conclude that the Department is an employer under the WPA. Consequently, the trial court erred when it determined otherwise.

## III. CONCLUSION

The trial court did not err when it dismissed Dennis' claim against Finstrom because there was no evidence that he participated in the events at issue or could be vicariously liable for another's participation. The trial court erred, however, when it determined that the Department could not be an employer under the WPA. Finally, the trial court erred when it determined that there was no question of fact as to whether Dennis suffered an adverse employment action and whether there was a causal link between any adverse employment action and Dennis' decision to engage in protected activity. For that reason, the trial court erred when it granted the motion for summary disposition by Wexford County and the Department. For the same reason, it did not err when it denied Dennis' motion for summary disposition.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Michael J. Kelly