*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DORETHY ROBINSON,

Plaintiff-Appellee,

v

CITY OF DETROIT,

Defendant-Appellant,

and

JOE TUCKER, MARLON WILSON, SHANDA STARK, KYLA WILLIAMS, and RODERICK TUCKER,

Defendants.

UNPUBLISHED
December 29, 2022

No. 360380
Wayne Circuit Court
LC No. 19-013919-NO

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In this Whistleblowers' Protection Act (WPA) case, defendant, the City of Detroit, appeals by leave granted[1] the trial court's order denying its motion for summary disposition. We agree with defendant that the trial court erred by finding a genuine issue of material fact that protected activity engaged in by plaintiff Dorethy Robinson was causally connected to the issuance of a suspension. For that reason, we reverse and remand.

---

[1] *Robinson v Detroit*, unpublished order of the Court of Appeals, entered April 14, 2022 (Docket No. 360380).

# I. BACKGROUND

At the time of the relevant events, Robinson worked as a sergeant in the Detroit Police Department's Domestic Violence (DV) Unit. According to Robinson, she began witnessing time fraud soon after her arrival in the DV Unit and reported the time fraud to Captain Joe Tucker and Internal Affairs (IA) during the first half of 2017. Robinson alleged that in July 2017, Jasmine Wilson, a civilian employee in the DV Unit, complained to her about sexual harassment by Sergeant Roderick Tucker.[2] Robinson was one of Wilson's supervisors, and she reported the allegation to Lieutenant Nathan Duda. Robinson also told Sergeant Tucker about Wilson's allegation and that Robinson had reported it, and Sergeant Tucker was extremely angry.

On July 25, 2017, Sergeant Tucker and Wilson reported to Captain Tucker that Robinson was "gossiping" and making false accusations. Wilson further alleged that Robinson—who was taking online classes—paid Wilson to complete her homework while Wilson was on duty. Wilson complained that Robinson's actions created a "hostile work environment," and she feared retaliation for coming forward to make her complaint. Wilson also filed a complaint against Robinson with Human Resources, accusing Robinson of personal harassment and intimidation. In this complaint, Wilson detailed Robinson's agreement to pay her to assist with Robinson's homework. Wilson explained that it began with "friendly help" but then escalated to "manipulation" by Robinson to ask Wilson to complete work for Robinson's courses. Wilson was "uncomfortable" with the whole situation and "exhausted" by the amount of work Robinson asked her to do. Eventually, Wilson told Robinson that she could not complete the assignments, and she returned the money that Robinson had given her.

Commander Myron Wilson and Captain Tucker met with Robinson to inform her about the complaints made against her, and Robinson complained that she was being retaliated against for her reports of sexual harassment and time fraud. In the meeting, Robinson again made time fraud allegations against several colleagues. Captain Tucker filed a complaint form with IA, sharing Sergeant Tucker's and Wilson's claims against Robinson, and Robinson's time fraud allegations against various colleagues. Robinson had an interview with IA on August 3, 2017, at which she detailed these time fraud allegations. Very soon after, Robinson was in a serious car accident and did not return to work until March 2019.

In February 2018, IA concluded its investigation into Robinson's time fraud complaints. Sergeant Deanna Wilson recommended that the case be closed with a finding of "not sustained" for time fraud allegations against Sergeants Tucker and Shanda Stark, and a finding of "unfounded" for other misconduct allegations made by Robinson. The IA report concluded that the investigation "did not reveal enough facts to support the allegations of Time Fraud or Conduct Unbecoming an Officer."

In July 2019, Robinson received an e-mail from IA stating that it closed its investigation into the homework allegations against her with a finding of "sustained" and that its findings were being forwarded to the Disciplinary Administration Unit for "formal charges and adjudication." An IA memorandum summarized the investigation's findings, noting that Robinson stated in an

---

[2] To avoid confusion, we will differentiate the Tucker defendants by using their rank.

interview that she "did request Ms. Wilson to complete her homework for her while she was on duty," and that Wilson "would complete the homework while on duty on her (Sergeant Robinson) computer."

In a "Notice of Discipline" dated August 2, 2019, Robinson was charged with "conduct unbecoming an officer" because she "encouraged a civilian employee to assist her with her schoolwork while on duty." She was also charged with "using authority or position for financial gain or for obtaining privileges or favors" because she "used her authority as a supervisor to influence a civilian employee to rewrite her homework papers while on duty which she used toward her own academic advancement." For these sustained charges, Robinson received a disciplinary suspension of 10 days. Disciplinary Administration sent Robinson the Notice of Discipline in an August 21, 2019 e-mail, and she replied that she would appeal the decision. Ultimately, Robinson never served the suspension. Soon after these events, she was granted permanent disability leave.

On October 18, 2019, Robinson filed suit against defendants,[3] raising a claim under the WPA, MCL 15.369 *et seq*. Robinson alleged that she engaged in protected activity when she reported time fraud and sexual harassment to Captain Tucker and other defendants, and that the 10-day suspension was issued in retaliation for her protected activity. Defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that Robinson's WPA claim was time-barred, that she did not suffer an adverse employment action, and that she could not establish a causal link between her protected activity and the suspension. Robinson disputed each of defendant's arguments and contended that questions of fact precluded summary disposition.

In an opinion issued from the bench, the trial court concluded that Robinson's complaint was timely filed within 90 days of the Notice of Discipline. Next, the trial court ruled that the Notice of Discipline constituted a threat to Robinson's terms and conditions of employment, and therefore was a sufficient adverse employment action under the WPA. As to causation, the court explained that "the issue of motivation for the discipline is a question of fact" for the jury. Accordingly, the court denied defendant's motion for summary disposition. Defendant moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). The trial court denied defendant's statute-of-limitations argument under MCR 2.116(C)(7). Under that subrule, summary disposition is properly granted when a claim is barred by the applicable limitations period. MCR 2.116(C)(7). A party moving for summary disposition under MCR 2.116(C)(7) may support its motion with documentary evidence, and "[t]he reviewing court must view the pleadings and supporting

---

[3] All individually named defendants were dismissed from the suit without prejudice. The City of Detroit is the only defendant remaining on appeal. Any reference to a singular defendant thus refers to the City of Detroit.

evidence in the light most favorable to the nonmoving party" to determine whether the claim is barred under the statute of limitations. *Kincaid v Cardwell*, 300 Mich App 513, 522-523; 834 NW2d 122 (2013). "In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo." *Magee v DaimlerChrysler Corp*, 472 Mich 108, 111; 693 NW2d 166 (2005). But summary disposition is inappropriate if a factual dispute exists concerning the applicability of the limitations period. See *Kincaid*, 300 Mich App at 523.

The trial rejected defendant's arguments about the absence of an adverse employment action and causal connection on (C)(10) grounds. Under MCR 2.116(C)(10), the party moving for summary disposition is entitled to judgment as a matter of law when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact." The court reviewing a motion for summary disposition under subrule (C)(10) considers affidavits, pleadings, depositions, and other documentary evidence in the light most favorable to the non-moving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The moving party bears the initial burden of production, which may be satisfied by establishing that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996). Once met, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. at 362. The non-moving party must "set forth specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his or her pleading." MCR 2.116(G)(4). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

## III. DISCUSSION

For several reasons, defendant contends that the trial court erroneously denied summary disposition. Defendant asserts that Robinson's complaint was untimely, and that even if it were timely, Robinson cannot establish the necessary elements of a prima facie claim under the WPA.[4]

---

[4] Defendant, relying on our Supreme Court's decision in *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604; 566 NW2d 571 (1997), argues that Robinson is precluded from even pursuing a WPA claim because she acted in bad faith. In *Shallal*, 455 Mich at 621, the Court stated that "[t]he primary motivation of an employee pursuing a whistleblower claim must be a desire to inform the public on matters of public concern, and not personal vindictiveness." (Quotation marks and citation omitted). But more recently, the Supreme Court rejected that conclusion:

> Nothing in the statutory language of the WPA addresses the employee's motivation for engaging in protected conduct, nor does any language in the act mandate that the employee's primary motivation be a desire to inform the public of matters of public concern. Rather, the plain language of MCL 15.362 controls, and we clarify that a plaintiff's motivation is not relevant to the issue whether a plaintiff has engaged in protected activity and that proof of primary motivation is not a prerequisite to bringing a claim. To the extent that *Shallal* has been interpreted to

## A. STATUTE OF LIMITATIONS

We first address defendant's argument that Robinson's complaint was barred by the WPA's statute of limitations.

MCL 15.363 sets forth the limitations period for bringing a WPA claim:

(1) A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both *within 90 days after the occurrence of the alleged violation of this act*. [Emphasis added.]

As explained by our Supreme Court in *Millar v Construction Code Auth*, 501 Mich 233, 240-241; 912 NW2d 521 (2018):

. . . [I]n order for an actionable wrong under the WPA to have occurred, an employer must have done more than simply make a decision to discriminate against an employee. Instead, the employer must have taken an adverse employment action against the plaintiff. It is the employer's *action* to implement the decision that triggers the running of the limitations period; not the decision itself. [Footnote omitted.]

Defendant relies on a July 9, 2019 report sent to Robinson—which stated that IA found merit in the misconduct alleged against her in July 2017—as the triggering date for the statute of limitations. Contrarily, Robinson relies on August 2 or August 21, 2019 dates—when the Disciplinary Administration Unit decided on the 10-day suspension and served the Notice of Discipline on her, respectively—as triggering dates. If defendant is correct, Robinson's October 18, 2019 complaint was not timely filed; but if Robinson is correct, her complaint was timely.

We conclude that Robinson's complaint was not barred by the 90-day statute of limitations. The July 9, 2019 report was not the final disciplinary decision. Rather, IA notified Robinson on that date that it forwarded its findings to Disciplinary Administration for formal charges and adjudication. In fact, the July 9 report stated that the "findings listed in the Investigation and Conclusion may not be the formal charges that are brought forth by the Disciplinary Administration Unit" and that she would be "served with a Notice of Discipline, showing the finalized charges, in the near future." Thus, the July 9 report informed Robinson that future charges would likely come from the Disciplinary Administration Unit, and it was the 10-day suspension issued by that unit that Robinson alleges was the retaliatory employment action under the WPA. When Robinson received notice of the 10-day suspension on August 21, 2019, the 90-day clock to file her claim began to run. This Notice of Discipline was defendant's action to implement its disciplinary decision against Robinson. See *Millar*, 501 Mich at 240-241. Because

---

mandate those requirements, it is disavowed. [*Whitman v City of Burton*, 493 Mich 303, 306; 831 NW2d 223 (2013).]

We therefore reject defendant's contention that alleged bad faith by Robinson bars her WPA claim.

Robinson's complaint was filed within 90 days of August 21, 2019, it was timely under MCL 15.363(1).

## B. ADVERSE EMPLOYMENT ACTION

Defendant next argues that the trial court erred because Robinson did not face an adverse employment action.

"Under the WPA, a plaintiff may establish a prima facie case by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection exists between the protected activity and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).[5] Section 2 of the WPA proscribes the specific types of actions by an employer that are actionable:

> An employer shall not discharge, *threaten*, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362 (emphasis added).]

Thus, to proceed on a retaliation claim, "the plaintiff must demonstrate one of the specific adverse employment actions listed in the WPA." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251 n 14; 848 NW2d 121 (2014).[6]

Defendant largely contends that no adverse employment action under the WPA occurred because Robinson did not suffer an ultimate employment decision, such as termination or demotion. But the scope of prohibited retaliatory conduct under the WPA encompasses *threats*—

---

[5] Defendant does not contest that Robinson was engaged in protected activity. " 'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998).

[6] Defendant erroneously relies on caselaw involving the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, in its argument that Robinson did not suffer an adverse employment action. "[D]espite courts' freewheeling transference of the term from one statute to another, the WPA actually prohibits *different* 'adverse employment actions' than the federal and state antidiscrimination statutes." *Wurtz*, 495 Mich at 252 n 14. Thus, it is inappropriate to import the definition of an "adverse employment action" under the CRA to a WPA claim.

an employer "shall not discharge, *threaten*, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment" for engaging in protected activity. MCL 15.362 (emphasis added). Robinson points to this Court's decision in *Randazzo v Inkster*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2016 (Docket Nos. 324149, 324400), as evidence that a threat of disciplinary action provides an actionable claim under the WPA. In *Randazzo*, the plaintiffs were police officers who engaged in protected activity by reporting violations of police department rules and regulations by the city's chief of police. *Id*. at 1, 4. The plaintiffs presented evidence that they were then threatened in retaliation—one plaintiff was threatened with termination, and the other plaintiff suffered a loss of compensation. *Id*. at 4. While neither plaintiff was ultimately terminated, this Court found "a genuine issue of material fact regarding whether plaintiffs were subject to an adverse employment action under the WPA." *Id*. at 4.

We agree that *Randazzo* is instructive.[7] *Randazzo* presents an example—just like this case—where the *threat* of disciplinary action sufficed to survive summary disposition on the adverse employment action question. Here, although Robinson never served a suspension, the issuance of a 10-day suspension is sufficient to constitute an adverse employment action. The WPA does not require Robinson to have actually served any suspension to present an actionable claim. Rather, the threat of a 10-day suspension is enough to establish a genuine issue of material fact regarding whether Robinson suffered an adverse employment action under the WPA. The trial court therefore did not err by concluding that the Notice of Discipline was a sufficient threat under the WPA.

## C. CAUSAL CONNECTION

Defendant next argues that the trial court erred by denying summary disposition because Robinson failed to establish a causal link between her 2017 complaints of misconduct and the 2019 suspension issued to her.

As previously noted, causation is a required element of a plaintiff's prima facie case of retaliation under the WPA. See *Debano-Griffin*, 493 Mich at 175. A plaintiff has the burden of establishing a causal connection between the protected activity and the employer's adverse employment action. *Id*. Causation may be shown through "either direct evidence or indirect and circumstantial evidence." *Shaw v Ecorse*, 283 Mich App 1, 14; 770 NW2d 31 (2009).

Robinson first argues that she presented direct evidence of retaliation. "Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the *employer's* actions." *Id*. at 14 (emphasis added). Robinson claims that, throughout 2017, she made several complaints to her supervisors of time fraud by multiple colleagues. She also alleged that she reported sexual harassment by Sergeant Tucker against Wilson. Soon after, Sergeant Tucker and Wilson raised complaints against Robinson for "gossiping," and Wilson alleged that Robinson paid her to complete Robinson's homework

---

[7] Unpublished opinions of this Court are not binding, but we may consider them for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

assignments. Wilson's homework complaint was investigated and substantiated by IA, leading to the 10-day suspension issued by Disciplinary Administration. While *Robinson's colleagues* may well have decided to report her misconduct because of her complaints, those colleagues were not involved in the investigation or decision to discipline Robinson. In fact, there is no direct evidence that the individuals responsible for the decision to discipline Robinson did so out of retaliation for Robinson engaging in protected activity. Thus, Robinson's claim of direct evidence of retaliation lacks merit.

"Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Debano-Griffin*, 493 Mich at 176. "[T]he evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Shaw*, 283 Mich App at 15. Robinson has failed to present evidence from which a fact-finder could reasonably conclude that the 10-day suspension issued against her was motivated by retaliation.

There is no evidence that Sergeant Tucker's and Wilson's motivations for reporting Robinson's misconduct—whatever they may have been—influenced or tainted the IA investigation. See *West*, 469 Mich at 185 ("Plaintiff had to demonstrate that the adverse employment action was in some manner influenced by the protected activity, but has failed to make such a demonstration."). IA independently investigated the complaints, and after sustaining the charges involving Wilson's assistance with Robinson's homework, forwarded its findings to the Disciplinary Administration Unit. That unit eventually issued the 10-day suspension to Robinson that she complains was retaliatory. No evidence supports the proposition that the outcome of the investigation into Robinson's misconduct had anything to do with her complaints from over two years earlier. That is no more than Robinson's own speculation. And "[t]o establish causation using circumstantial evidence, the 'circumstantial proof must facilitate reasonable inferences of causation, not mere speculation.' " *Shaw*, 283 Mich App at 15, quoting *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994).

Nor did Robinson present any evidence of a temporal connection to support a reasonable inference of retaliation. While a temporal connection between protected activity and an adverse employment action does not alone establish causation, it can be evidence of a causal link. *Shaw*, 283 Mich App at 15. There is no temporal connection between Robinson's protected activity—which occurred before and during July 2017—and the only actionable adverse employment action—the suspension issued in August 2019. At least two years passed between these events, with an intervening IA investigation in the middle, diminishing any possible inference of retaliation that could have existed. The flaw throughout Robinson's argument is her belief that alleged retaliation by Sergeant Tucker and Wilson provides an actionable WPA claim. But again, these two colleagues played no part in the suspension issued to Robinson, and the suspension is the only actionable adverse employment action alleged by Robinson. See *West*, 469 Mich at 185, 188 (finding a lack of causal connection when the plaintiff reported protected activity to his supervisors and these supervisors were not involved in the decision to discharge the plaintiff). In sum, there is no genuine issue of material fact that the issuance of a suspension to Robinson was

not motivated by retaliation for Robinson's protected activities. The trial court therefore erred by denying defendant's motion for summary disposition.[8]

## IV. CONCLUSION

We reverse the trial court's order denying defendant's motion for summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

---

[8] Because Robinson has failed to establish a prima facie case under the WPA, we need not address defendant's other argument that it had a legitimate business reason for issuing the suspension against her. See *Debano-Griffin*, 493 Mich at 176 (explaining that once a plaintiff establishes a prima facie case, an employer may still be entitled to summary disposition "if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action") (quotation marks and citation omitted).