*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

KIMBERLY JOHNSON,

      Plaintiff-Appellant,

v

CITY OF DETROIT, MIKEL OGLESBY, LOIS PITTMAN, MARYANN WALSH, DEBRA WARE, and KELECHI N. AKINBOSEDE,

      Defendants-Appellees

and

OFFICE OF INSPECTOR GENERAL,

      Defendant.

UNPUBLISHED
August 05, 2025
11:23 AM

No. 367098
Wayne Circuit Court
LC No. 21-015461-CD

---

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants, city of Detroit, Mikel Oglesby, Lois Pittman, MaryAnn Walsh, Debra Ware, and Kelechi N. Akinbosede,[1] under MCR 2.116(C)(10) and dismissing her claims for violation of the Whistleblowers' Protection Act (WPA), MCL 15.369 *et seq*., violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., and municipal liability under 42 USC 1983. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] Throughout this opinion, the term "defendants" refers solely to defendants-appellees, unless otherwise stated. In the trial court, plaintiff also brought claims against the Office of Inspector General (OIG), which were dismissed, with prejudice, by stipulation.

-1-

## I. BACKGROUND

This case arises out of the suspension and subsequent termination of plaintiff from her position as superintendent of operations at the Detroit Department of Transportation (DDOT). The disciplinary action was issued within one week after plaintiff filed a complaint with the Office of Inspector General (OIG) alleging that the DDOT administration misused city resources.

Plaintiff is an African-American female over the age of 40. She began her employment with DDOT in 1986. She received many promotions over the years, and eventually became the superintendent of operations in 2015. Beginning in 2019, plaintiff had a strained relationship with her then-supervisor, Zaundra Wimberley. Wimberley disciplined plaintiff on several occasions regarding her professionalism, job performance, and compliance with DDOT's on-call and vacation policies.

In September 2020, Pittman was hired as DDOT's deputy director of operations and maintenance. Pittman reported to Oglesby, DDOT's executive director.[2] Shortly after Pittman's hiring, Wimberley suggested to Pittman that plaintiff be terminated. Although Pittman agreed that the documentation provided by Wimberly supported plaintiff's termination, Pittman declined to terminate plaintiff. Instead, Pittman met with plaintiff to discuss her expectations moving forward. She informed plaintiff that Wimberley requested that plaintiff be terminated. Pittman explained to plaintiff that she was giving her an opportunity to prove Wimberley's accusations wrong.

Over the ensuing months, many personnel changes took place at DDOT. Walsh was hired as the interim deputy director of administration. Ware was hired as a superintendent of operations. Ware worked alongside plaintiff and Andre Mallet—another superintendent of operations. Plaintiff requested Pittman to remove her from Wimberley's supervision, and Pittman honored her request. Plaintiff was briefly supervised by Larry Smith, and then Pittman. In March 2021, Mallett was appointed to the position of interim assistant director of operations, and became plaintiff's direct supervisor. Both plaintiff and Mallett remained subordinate to Pittman.

In late June 2021, plaintiff indicated that she was sick and was taking a day off. Plaintiff also took the following two days off, but failed to notify management. Accordingly, Pittman considered plaintiff to be absent without leave (AWOL). A few days later, Pittman attempted to call plaintiff regarding a city-wide emergency. Plaintiff failed to respond to Pittman's calls. Plaintiff also failed to follow the applicable procedures when she took vacation time.

On July 5, 2021, plaintiff called the OIG and spoke to Edyth Porter-Stanley, an OIG forensic auditor, expressing that she wished to submit a complaint based on concerns that DDOT individuals were misusing city-assigned vehicles. Plaintiff also complained of a potential conflict of interest between coworkers. Porter-Stanley allegedly informed plaintiff that it was within Oglesby's authority to determine who could use city vehicles, and that the OIG did not "investigate operational decisions of Directors unless they are an abuse of their authority." Porter-Stanley also allegedly indicated that the conflict of interest likely would not warrant investigation. Plaintiff maintained that Porter-Stanley informed her that the OIG's office would look into the matter and

---

[2] Oglesby assumed the role of executive director in May 2020.

get back to her. Plaintiff also contacted Human Resources representative, Rosita Brockington, expressing concerns about DDOT management. Brockington allegedly referred plaintiff to the OIG.

On July 7, 2021, plaintiff filed an OIG complaint alleging that Oglesby, Pittman, Walsh, and Ware were using city vehicles for personal use. She also complained of favoritism, unfair work hours, and an atmosphere of disparaging treatment. It is undisputed that plaintiff did not inform anyone that she was filing the OIG complaint. Plaintiff indicated in the OIG complaint that she wished to remain anonymous. It is undisputed that there were no allegations of race, age, or gender discrimination in plaintiff's OIG complaint. Porter-Stanley and Akinbosede, an OIG inspector, reviewed plaintiff's allegations and decided not to open an investigation. Akinbosede e-mailed plaintiff the next day, informing her that the OIG decided not to open an investigation because the matter was outside its jurisdiction.

Pittman sent plaintiff an e-mail requesting that they meet and discuss her infractions after plaintiff returned from her July 6, 2021 to July 7, 2021 vacation. Plaintiff did not respond to the e-mail. On July 10, 2021, plaintiff was on-call, but she could not be reached by telephone. On the basis of plaintiff's absences and noncompliance with work policies, Pittman and Brockington drafted a discipline form and, on July 12, 2021, issued plaintiff a 30-day suspension with a recommendation for termination. Plaintiff contested the alleged violations and stated that the information was inaccurate. Plaintiff filed an initial grievance seeking reversal of the discipline. She attended a meeting with Oglesby, who upheld the discipline. Plaintiff was terminated in August 2021.

In November 2021, plaintiff filed a complaint against defendants alleging that she was terminated without just cause as a result of her OIG complaint. She asserted claims of retaliation under the WPA and the ELCRA, and municipal liability under 42 USC 1983.[3] Following discovery, defendants moved for summary disposition under MCR 2.116(C)(10). Defendants argued plaintiff failed to establish a prima facie case of retaliation under the WPA or the ELCRA. Defendant's asserted that the OIG complaint did not constitute a protected activity under the ELCRA, plaintiff could not establish causation between her OIG complaint and termination, and plaintiff could not establish that defendants' legitimate business reasons for her termination were pretextual. Defendants also argued that plaintiff's municipal liability claim failed because she could not establish an underlying constitutional injury caused by a city policy or custom. Plaintiff maintained that there was a question of fact for the jury whether there was a causal connection between her OIG complaint and her termination. Plaintiff maintained that there was sufficient evidence to raise an inference that her OIG complaint was the reason for her termination. She further argued that defendants' failure to respond to the OIG complaint or investigate her allegations of a hostile work environment constituted retaliation. Plaintiff also asserted that the city had a practice, policy, and procedure of not investigating claims of a hostile work environment raised with the OIG.

---

[3] Plaintiff also brought claims alleging a contractual violation based on her termination without just cause and a violation of her due process rights under 42 USC 1983. She later stipulated to dismiss these claims against all defendants.

-3-

After three motion hearings and a brief period of supplemental discovery, the trial court granted summary disposition in favor of defendants. The trial court determined that there was inadequate evidence for a reasonable fact-finder to conclude that plaintiff's OIG complaint was causally connected to her disciplinary action and termination. The trial court stated that there was no evidence that the defendants who were involved in making that adverse employment decision were aware that plaintiff had filed the OIG complaint. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up).

"Whether evidence establishes a prima facie case of retaliation under the WPA is a question of law that this Court also reviews de novo." *Rivera v SVRC Indus, Inc*, 327 Mich App 446, 453; 934 NW2d 286 (2019), rev'd in part on other grounds 507 Mich 962 (2021).

## III. WHISTLEBLOWERS' PROTECTION ACT

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendants on her WPA retaliation claim. We agree.

The WPA prohibits employers from discharging an employee who reports or is about to report a legal violation, providing:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

Under this provision, a plaintiff may establish a prima facie violation of the WPA "by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection exists between the protected activity and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (cleaned up).

A plaintiff may rely on direct or indirect evidence to establish a prima facie violation of the WPA. *Id*. at 176. "Direct evidence" is " 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001), quoting *Jacklyn v Schering-Plough Healthcare Products Sales Corp*, 176 F3d 921, 926 (CA 6, 1999). "Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Debano-Griffin*, 493 Mich at 176. When a plaintiff relies on indirect evidence, the burden-shifting analysis of *McDonnell Douglas*[4] applies. *Hazle*, 464 Mich 462-463. "A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin*, 493 Mich at 176 (cleaned up). Once a plaintiff establishes a prima facie case under this standard, a presumption of retaliation arises. *Id*. The burden then shifts to the employer to rebut this presumption by offering "a legitimate reason for its action . . . ." *Id*. If the employer offers such a reason, the burden shifts back to the plaintiff to "show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action" in order to avoid summary disposition. *Id*.

Defendants concede that plaintiff was engaged in a protected activity and discharged. But the trial court concluded that plaintiff did not present sufficient evidence of a causal connection between the protected activity and her termination. As a preliminary matter, plaintiff challenges the trial court's assertion that plaintiff had to present "real evidence" that defendants had notice of plaintiff's OIG complaint. The record does not reflect that the trial court improperly required plaintiff to support causation with direct evidence. In fact, the trial court questioned what evidence there was, "regardless of direct or circumstantial evidence," that defendants were aware of plaintiff's OIG complaint. Plaintiff conceded that she did not have direct evidence of retaliation, but argued that the circumstantial occurrences were reasonable for a trier of fact to infer that there was knowledge. The trial court ultimately concluded that the circumstantial evidence was insufficient.

To establish a causal connection, a plaintiff must "demonstrat[e] that [her] employer took adverse employment action *because of* [her] protected activity." *Whitman v Burton*, 493 Mich 303, 320; 831 NW2d 223 (2013) (citation omitted). A causal connection must rely on "more than pure conjecture and speculation . . . ." *West v Gen Motors Corp*, 469 Mich 177, 188; 665 NW2d 468 (2003). "In other words, the evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Shaw v Ecorse*, 283 Mich App 1, 15; 770 NW2d 31 (2009). However, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West*, 469 Mich at 186. "Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action." *Id*. at 184.

---

[4] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

The evidence supports a reasonable inference that plaintiff was terminated because of her OIG complaint. Oglesby, Pittman, and Brockington maintained that they first learned of plaintiff's OIG complaint when she filed the instant lawsuit. But before plaintiff was terminated, she alleged in her grievance that she believed the issued discipline was "in retaliation for [her] recent report of inequity, disparaging treatment and favoritism." Although Brockington testified that plaintiff did not tell her that she was going to file the OIG complaint, plaintiff averred in her affidavit that Brockington referred her to the OIG when she reported her concerns about abuse of public resources. Brockington conceded that she had no reason to dispute plaintiff's statement that Brockington referred her to the OIG. "[I]t is reasonable to infer that the more knowledge the employer has of the plaintiff's protected activity, the greater the possibility of an impermissible motivation." *Debano-Griffin*, 493 Mich at 178. Additionally, plaintiff's OIG complaint directly accused Oglesby, Pittman, Walsh, and Ware of misconduct. "[T]he more an employer is affected by the plaintiff's whistleblowing activity, the stronger the causal link becomes between the protected activity and the employer's adverse employment action." *Id*. Viewing the evidence in the light most favorable to plaintiff, there is a reasonable inference that plaintiff was the victim of unlawful retaliation and thus plaintiff established a rebuttable prima facie case under the WPA.

Defendants "may be entitled to summary disposition if [they] offer[] a legitimate reason for [their] action . . . ." *Id*. at 176. Defendants explained that plaintiff was terminated because she was derelict in her duties by failing to maintain contact with DDOT, was AWOL, and failed to follow the applicable vacation leave policy.

"To avoid summary disposition after the employer offers such a reason, the plaintiff must show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action, i.e., that the employer's articulated legitimate reason was a pretext disguising unlawful animus." *McNeill-Marks v MidMich Med Ctr-Gratiot*, 316 Mich App 1, 18; 891 NW2d 528 (2016). A plaintiff can establish that the employer's articulated reasons are pretexts "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Id*. But "[t]he fact that a plaintiff engages in a "protected activity" under the Whistleblowers' Protection Act does not immunize him from an otherwise legitimate, or unrelated, adverse job action." *West*, 469 Mich at 188.

Although defendants asserted plaintiff was derelict in her duties by failing to maintain contact with DDOT, plaintiff presented testimony that dereliction of duty is not an offense categorized under her work rules. Additionally, plaintiff contested defendants' assertion that she was AWOL by providing testimony that she was not AWOL under DDOT's work rules. Mallet testified that plaintiff provided notice of her absence and her use of vacation time was not improper. Plaintiff also testified that she utilized an out-of-office e-mail before going on vacation. Even if defendants' stated reasons were factually accurate and motivating factors in their decision, plaintiff presented evidence that those factors were jointly insufficient to justify her termination because she received no prior disciplinary action and she would have been issued a three-day suspension under the usual progressive discipline policy. The record has sufficient evidence for a rational fact-finder to conclude that the legitimate business reasons provided by defendants for plaintiff's termination were pretextual.

Plaintiff presented sufficient circumstantial evidence to allow a reasonable fact-finder to find a causal connection between her protected activity, i.e., her OIG complaint, and her subsequent termination. Plaintiff therefore established a rebuttable prima facie case under the WPA. A reasonable fact-finder could also infer that the legitimate business reasons provided by defendants for plaintiff's termination were pretextual. Accordingly, the trial court erred by granting summary disposition in favor of defendants on plaintiff's WPA retaliation claim.

## IV. ELLIOTT-LARSEN CIVIL RIGHTS ACT

Plaintiff also asserts that she properly established the prima facie elements of an ELCRA retaliation claim and that the trial court erroneously determined she was required to prove disparate treatment. We disagree.

The ELCRA directs that a person shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). A plaintiff must prove the following elements to establish a prima facie case of retaliation: "(1) that [she] engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil*, 504 Mich at 161 (cleaned up).

This Court has explained that "[u]nder ELCRA, an employer is liable if it retaliates against an employee for having engaged in protected activity, e.g., opposing a violation of the act's antidiscrimination provision." *White v Dep't of Transp*, 334 Mich App 98, 114; 964 NW2d 88 (2020). Although an employee is not required to specifically cite the ELCRA when opposing a violation, "the employee must do more than generally assert unfair treatment. The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to [ELCRA]." *Barrett v Kirtland Community College*, 245 Mich App 306, 319; 628 NW2d 63 (2001) (citations omitted).

Plaintiff argues that the trial court erred by requiring her to prove disparate impact. This argument ignores the trial court's explicit statement that the key factor in its decision to dismiss plaintiff's ELCRA claim was the lack of notice and causation. To the extent the trial court addressed disparate treatment, it did so in a "brief word," stating that the reason for the law is "to protect us all from the powerful misusing their power." Nothing about this statement indicates that the court required plaintiff to establish disparate treatment. Accordingly, plaintiff's argument is unavailing.

Nonetheless, we conclude that plaintiff failed to establish that she was engaged in a protected activity. Plaintiff claims that her OIG complaint constituted a protected activity because she alleged, "The staff fear retaliation or threats of being fired if they dare speak up. The Oglesby executive team has created an extreme tense atmospheric culture that reeks of inappropriate behaviors and disparaging treatments which begs to be reviewed for oversight, compliance and transparency." Although plaintiff was not required to cite the ELCRA in her OIG complaint, she had to "do more than generally assert unfair treatment." *Id*. Plaintiff's allegations regarding retaliation and disparaging treatment are general, and make no reference to any protected class.

Without more specific allegations, plaintiff's OIG complaint fails to "clearly convey to an objective employer that [plaintiff] [was] raising the specter of a claim of unlawful discrimination pursuant to [ELCRA]." *Id.* (citations omitted). Further, it is reasonable to infer that plaintiff intentionally filed her complaint with the OIG to avoid making protected-class-based allegations, because she elected not to file a grievance with the City of Detroit Civil Rights and Inclusion Operations Department. Because there is no genuine issue of material fact that plaintiff's OIG complaint was not a protected activity, plaintiff failed to establish a prima facie case of retaliation under the ELCRA and thus the trial court did not err by granting summary disposition in favor of defendants on this claim.

## V. MUNICIPAL LIABILITY

Plaintiff further argues that she properly established a municipal liability claim, and that the trial court erroneously determined she was required to prove causation with direct evidence. We disagree.

"Establishing municipal liability under 42 USC 1983 requires proof that: (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality." *Johnson v Vanderkooi*, 502 Mich 751, 762; 918 NW2d 785 (2018), citing *Monell v Dep't of Social Servs of City of New York*, 436 US 658, 690-691; 98 S Ct 2018; 56 L Ed 2d 611 (1978). "[T]o survive summary disposition, a plaintiff must first identify and connect a policy or custom to the municipality, and then point to facts in the record demonstrating that implementation or execution of that policy or custom caused the alleged constitutional violation." *Johnson*, 502 Mich at 763.

Plaintiff alleges that the city had a custom of "not investigating a claim of harassment and/or hostile work environment raised with the [OIG]." Municipal customs may give rise to liability where there is a "permanent and well settled practice . . . with the force of law." *Johnson*, 502 Mich at 764 (cleaned up). Plaintiff's assertion that the city had a custom of failing to investigate claims of harassment is undermined by the city's internal policy prohibiting discrimination and harassment. Further, plaintiff simply cites to her own personal experience to support her claim. Plaintiff's assertion that the city "failed to investigate the complaint filed by [plaintiff] with the OIG," does not rise to the level of showing a permanent and well-settled practice of failing to conduct OIG investigations. See *Johnson*, 502 Mich at 764.

Aside from identifying a custom of a municipality, plaintiff is also required to establish "an affirmative link between the policy or custom and the particular constitutional violation alleged," such that the policy or custom is "the moving force behind the alleged constitutional violation." *Id.* at 763 (cleaned up). The record evidence does not establish a causal link between the denial of plaintiff's OIG complaint and her termination. The OIG and Akinbosede do not "have any authority to issue discipline to employees in other City Departments."

Finally, plaintiff's argument that the trial court improperly determined that she had to establish causation with direct evidence is unfounded in the record. The trial court properly reasoned that plaintiff could not "establish that the adverse employment decision was made with any knowledge of the Complaint filed with the OIG." The trial court did not make any references to direct evidence in so ruling.

For the foregoing reasons, plaintiff failed to establish a municipal liability claim, and the trial court did not err by granting summary disposition.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael J. Riordan